COMMISSIONER OF REVENUE *vs.* THOMAS P. CARRIGAN.

No. 97-P-758.

Suffolk. April 17, 1998. - August 17, 1998.

Present: ARMSTRONG, BROWN, & LENK, JJ.

*Taxation,* Commissioner of revenue. *Rules of Civil Procedure. Practice, Civil,* Service of process, Burden of proof.

Discussion of Rule 4(j) of the Massachusetts Rules of Civil Procedure setting forth the ninety-day time limit for service of a summons and complaint and the standard of "good cause" to be demonstrated if service is not effected within that period. [311-312]

The Commissioner of Revenue did not demonstrate good cause for failure to serve a summons and complaint within the ninety-day time limit from filing imposed by Mass. R. Civ. P. 4(j), where the record of proceedings did not demonstrate that the taxpayer was evading service or that the Commissioner's efforts at service were. diligent or reasonable: the taxpayer's motion to dismiss the complaint without prejudice should have been allowed. [312-316]

CIVIL ACTION commenced in the Superior Court Department on January 17, 1996.

The case was heard by *Margaret R. Hinkle,* J., on motions for summary judgment.

*Alan L. Packer* for the defendant.

*Peter Kortkamp* for the plaintiff.

LENK, J. The sole issue on appeal is whether the trial court judge erred in denying the defendant's motion to dismiss the complaint for failure to comply with Mass.R.Civ.P. 4(j), as amended, 402 Mass. 1401 (1988).

*Background.* The Commissioner brought a complaint against Carrigan on January 17, 1996, to recover four years' worth of unpaid Massachusetts income taxes. He attempted contemporaneously to effect service on Carrigan by forwarding a copy of the summons and complaint to the deputy sheriff for personal service in Massachusetts and by sending a copy to Carrigan by

certified mail, return receipt requested, to his Florida address. The Commissioner was alerted by Carrigan's February 26, 1996, motion to dismiss, brought by local counsel appearing specially, that the defendant claimed residence only in Florida, having moved there in 1993.[1] The Commissioner conceded at argument that service in Massachusetts was not effective. On February 13, 1996, the Commissioner again sent a copy of the summons and complaint to Carrigan in Florida by certified mail. By March 15, 1996, the Commissioner learned that the February 13, 1996, mailing had come back unclaimed and immediately sent a letter to Carrigan's local counsel informing him of this development. In that letter, the Commissioner indicated that he planned to send the complaint again to Florida by certified mail, "imagine[d]" that he could "also secure an Order directing service by publication," but urged counsel instead to accept service on behalf of his client.

Carrigan's local counsel responded on March 18, clarifying that he was not authorized to accept or waive service on Carrigan's behalf and advising the Commissioner that Carrigan "travels a great deal." Notwithstanding this, the Commissioner sent a third certified mailing to Florida on March 19. The Commissioner then sent another letter to local counsel on March 27, the theme of which was his view that he had "satisfactorily complied with the rules governing service" and that the purpose of local counsel's posture was to obstruct and delay. Once again on April 3, 1996, the Commissioner wrote to local counsel, complaining that his January certified mail effort had come back unclaimed[2] and advising that he would "be making alternative arrangements for Mr. Carrigan to be served by special process server in Florida." He waited six days to do so, seeking and obtaining on April 9, 1996, an order for appointment of special process server. The Commissioner did not, however, seek at that time an extension of time to serve process under Mass.R.Civ.P. 6(b), 365 Mass. 747-748 (1974). When service was ac-

---

[1]The motion was denied without prejudice to being renewed after the expiration of the time period allocated by the tracking order for making service.

[2]The United States Postal Service made three attempts to serve each of the three certified mailings before returning them to the Commissioner as "unclaimed."

complished on April 20, 1996,[3] the ninety-day period prescribed by Mass.R.Civ.P. 4(j) had expired. The judge denied without hearing Carrigan's motion to dismiss for failure to comply with rule 4(j) because "[s]ervice was properly effected and jurisdiction has attached." The judge then allowed the Commissioner's motion for summary judgment and Carrigan appealed.

*Discussion.* Rule 4(j) of the Massachusetts Rules of Civil Procedure, effective July 1, 1988, provides: "Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion." Rule 4(j) is identical to the Federal counterpart except that the Massachusetts rule allows ninety days for service of process where the Federal rule allows 120 days. We look to judicial interpretations of the parallel Federal rule for guidance absent pertinent State precedent, "compelling reasons to the contrary or significant differences in content." *Shuman* v. *Stanley Works*, 30 Mass. App. Ct. 951, 952-953 (1991).

The judge denied Carrigan's motion to dismiss because she concluded that service had ultimately been properly effected and jurisdiction had attached. In so doing, the judge apparently applied the wrong standard. The burden was on the Commissioner to show "good cause" why service was not made within the ninety-day period required by rule 4(j), *id.* at 953, and the judge made no finding that the Commissioner had met his burden.

Good cause is " 'a stringent standard requiring diligen[t]' albeit unsuccessful effort to complete service within the period prescribed by the rule." *Ibid.*, quoting from *Davis-Wilson* v. *Hilton Hotels Corp.*, 106 F.R.D. 505, 509 (E.D. La. 1985). *Hull* v. *Attleboro Sav. Bank*, 33 Mass. App. Ct. 18, 26 (1992). Federal "Rule 4(j) renders dismissal after 120 days mandatory rather than discretionary in the absence of good cause or a request for extension of time." *United States* v. *Gluklick*, 801 F.2d 834, 837 (6th Cir. 1986), cert. denied, 480 U.S. 919 (1987). See *Winters* v. *Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305-1306

[3]Service was made by posting process upon the front door of the defendant's Florida home.

(5th Cir. 1985); *Geiger* v. *Allen,* 850 F.2d 330, 331-332 (7th Cir. 1988). "Although the Rule was meant to be strictly construed, 4 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1138 (Supp. 1982), its execution is not unduly harsh due to the liberal extension of time allowances permitted under Rule 6(b)." *Burks* v. *Griffith,* 100 F.R.D. 491, 492 (N.D.N.Y. 1984). "The focus of the court's inquiry [as to good cause] is the reasonableness and diligence of counsel's effort to effect service within the time required." *Shuman, supra* at 953. "The only example of good cause provided by the legislative history is the obvious one of a defendant's evasion of service." *Ibid.,* quoting from *Wei* v. *State,* 763 F.2d 370, 371 (9th Cir. 1985). The rule's "entire focus was to force plaintiffs' (more realistically their lawyers') diligence in order to preserve causes of action against limitations problems." *Coleman* v. *Greyhound Lines, Inc.,* 100 F.R.D. 476, 477 (N.D. Ill. 1984). Government plaintiffs are not exempt from strict compliance with this rule.

The Commissioner argues that, had the proper legal standard been applied, the record nonetheless evidences good cause for his late service of process upon the defendant. He contends in this regard that he made numerous efforts to serve Carrigan, that Carrigan had actual notice of the claim against him and was not prejudiced by the late service, and that Carrigan evaded service.[4]

Addressing the last point first, we observe that the Commissioner offers few facts to support his characterization of Carrigan as evading service, yet insists that it is an obvious conclusion. That Carrigan no longer lived in Massachusetts and that Carrigan's lawyer would not accept service on his behalf are not facts pertinent to an evasion of service analysis. Nothing in the record suggests that Carrigan was a Massachusetts domiciliary at the time of attempted service. As the Commissioner concedes, defense counsel has no obligation to accept service of process on behalf of his client for the convenience of plaintiff's counsel. *Gordon* v. *Hunt,* 116 F.R.D. 313, 323 (S.D.N.Y.), aff'd,

---

[4]The Commissioner urges that great weight be attached to the fact that service was effected only four days after the rule 4(j) period expired. The case law does not dwell on this factor. See *Hull* v. *Attleboro Sav. Bank,* 33 Mass. App. Ct. 18, 25-26 (1992); *Geller* v. *Newell,* 602 F. Supp. 501, 502 (S.D.N.Y. 1984); *Davis-Wilson* v. *Hilton Hotels Corp.,* 106 F.R.D. 505, 509 (E.D. La. 1985). The weight given it depends upon how reasonable the delay is in the context of the over-all circumstances and, in particular, the reasonableness and diligence of the plaintiff's efforts to effect service in a timely manner.

835 F.2d 452 (1987), cert. denied, 486 U.S. 1008 (1988). The only other facts of record that can support the Commissioner's evasion of process claim are the three unsuccessful mailings by certified mail which were returned "unclaimed." There is no indication, however, that any mailings were ever refused by the defendant or that he was indeed home but unresponsive when efforts to deliver were made. The inference that the defendant was evading process does not follow inexorably from the unclaimed mailings, which are as consistent with the defendant's absence from home as with an effort to avoid service. Notably, the only time that the Commissioner tried an alternative method to the many failed attempts at service by certified mail, it was successful. This is hardly surprising since the alternative employed was to post the process upon the front door of the defendant's Florida home, rendering irrelevant Carrigan's travel schedule. Compare *Gordon* v. *Hunt*, 116 F.R.D. at 324-325. Contrast *United States* v. *Nuttall*, 122 F.R.D. 163, 164-165, 167 (D. Del. 1988) (good cause shown for late service where the defendant acknowledged receipt of the complaint by mail, which had been twice sent; the complaint was read to the defendant by a marshal over the telephone; the defendant made explicit reference to the docket number on correspondence with the marshal; and the plaintiff's agent attempted personal service on the defendant on no fewer than eighteen occasions at various times of day). While the record here indicates that the defendant did nothing to facilitate service of process upon him, we are not persuaded that it proves his intent to evade process. The Commissioner has not met his burden of showing good cause in this regard.

Indeed, in *Nuttall*, *supra*, the court did not focus upon whether the defendant's conduct constituted evasion of service and therefore per se good cause, but upon whether the government plaintiff made reasonable efforts to effect service. The Commissioner's efforts here pale in comparison. While the Commissioner directs our attention to the flurry of correspondence he engaged in as evidence of his diligence and reasonable efforts at service, closer scrutiny reveals that the failure to serve Carrigan timely was due to inadvertence of counsel and half-hearted efforts. See *Geiger* v. *Allen*, 850 F.2d at 333-334. Such inadvertence does not constitute good cause. See *Braxton* v. *United States*, 817 F.2d, 238, 242 (3d Cir. 1987).

Approximately thirty days into the ninety-day period, the

Commissioner knew that the service he attempted in Massachusetts was in jeopardy and that the defendant claimed not to have been served in Florida. By March 15, 1996, almost sixty days into the ninety-day period, the Commissioner not only had no receipts in hand from his January 17 and February 13 certified mailings to Florida, he knew that the latter had been returned unclaimed. His response, heedless of the ticking clock, was to resort once again to certified mail, a mode of service that had already failed him twice before, and to engage over the next two weeks in a hectoring correspondence with defendant's counsel who told him plainly that he would not be accepting service. Indeed, on April 3 (day seventy-seven out of ninety), the Commissioner advised counsel that he would arrange for alternative service in Florida, but did not attempt to do so until April 9 (day eighty-three). Even then, with time running out, he apparently did not think to ask the court for an extension of time under rule 6(b).[5] Nor does the record show that the Commissioner had prior favorable experience with the Florida process server he elected to use, that the process server was dependable, or that he monitored the progress of that special process server in an effort to assure expedited and timely service by April 16. See *Braxton* v. *United States, supra* at 242; *Lovelace* v. *Acme Markets Inc.*, 820 F.2d 81, 84-85 (3d Cir.), 484 U.S. 965 (1987). Contrast *National Union Fire Ins.* v. *Barney Assocs.*, 130 F.R.D. 291, 293 (S.D.N.Y. 1990) (counsel reasonably diligent by monitoring progress of process server and tracing service hired to locate defendant).

Even if it were reasonable to rely exclusively upon the efficacy of certified mail for the first sixty days, the Commissioner's continued reliance thereafter until April 9 was not. "When the [rule 4(j)] period reaches its expiration and adequate proof of service of process has not been received, the plaintiff must take additional steps to ensure timely service of process, or, in the alternative, move under [rule] 6(b) for an enlargement of the time to effect service of process." *Lovelace* v. *Acme Markets, Inc.*, 820 F.2d at 84. The Commissioner's somewhat sanguine approach after March 15, and certainly after April 3, is

---

[5] The Commissioner sought an extension under rule 6(b) nunc pro tunc eight months later on January 9, 1997. This does not alter our analysis since the Commissioner is not thereby relieved of his burden of showing good cause under rule 4(j). *Winters* v. *Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985).

difficult to fathom. When the Commissioner finally sought an alternative method of service on April 9, his failure at that time also to seek an extension of time for service under Mass.-R.Civ.P. 6(b) is equally difficult to understand and is "some evidence of lack of diligence." *Shuman*, 30 Mass. App. Ct. at 953. In addition, he thereafter failed to monitor the process server to ensure timely service. "It cannot be said that the acts of plaintiff and his counsel as the [rule 4(j)] period reached its expiration constituted diligent efforts to ensure timely service of process. Alternative means to effect timely service of process were available, as was [rule] 6(b), if additional time to serve process was required." *Lovelace, supra* at 85.

It appears[6] that the statute of limitations as to the earliest of the four tax years at issue here ran shortly after the complaint was filed. This was a grim reality of which the Commissioner was or should reasonably have been aware in the ninety-day period following the filing of his complaint, since noncompliance with rule 4(j) absent good cause merits dismissal of the complaint, albeit without prejudice. In circumstances such as these, however, any subsequent complaint, at least as to the first tax year, would arguably be time-barred. "This will, of course, sometimes be the inevitable consequence of such a dismissal. It does not prevent the operation of rule 4(j), much less provide a basis of a finding of good cause for the failure to make service." *Hull* v. *Attleboro Sav. Bank*, 33 Mass. App. Ct. at 27.

Rather than taking additional steps to ensure timely service, thereby treating the ninety-day rule 4(j) period "with the respect reserved for a time bomb," *Braxton, supra* at 241, quoting from Siegel, Practice Commentary on Amendment of Federal Rule 4 (Eff. Feb. 26, 1983) with Special Statute of Limitations Precautions, 96 F.R.D. 88, 103 (1983), the Commissioner, long aware of the shortcomings of the certified mail mode of service and Carrigan's peripatetic ways, inexplicably waited until the last minute to attempt alternative service, sought no extension, and failed to monitor the process server.

Whether or not Carrigan was prejudiced by the Commis-

---

[6]While the point is not necessary to our holding, it was raised in passing by Carrigan in his brief. The Commissioner seemingly endorsed this view in his own brief, where he stated, "Carrigan greatly has benefited from this [late service] since, as he notes in his brief, the statute of limitations on collections would now bar a major portion of the Commissioner's claims if the Commissioner were required to begin this action anew."

sioner's tardiness is not a relevant consideration, and thus does not enter into our analysis. See *Shuman, supra* at 954 n.3. Nor is it dispositive that Carrigan may have had actual notice of the Commissioner's claim against him. See *Davis-Wilson* v. *Hilton Hotels Corp.*, 106 F.R.D. at 508. In these circumstances, counsel's inadvertence and lack of diligence in effecting service of process account for the plaintiff's noncompliance with rule 4(j). The Commissioner failed to show "good cause" for such noncompliance and the defendant's motion to dismiss the complaint without prejudice under rule 4(j) should have been allowed.

The judgment is reversed. An order shall enter dismissing the complaint pursuant to Mass.R.Civ.P. 4(j).

*So ordered.*