Chijioke Bomani BEN–YISRAYL, f/k/a Greagree Davis, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–9307–PD–826.

Supreme Court of Indiana.

Nov. 8, 2000.

Susan K. Carpenter, Public Defender of Indiana, Steven H. Schutte, Deputy Public Defender, Joanna Green, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James D. Dimitri, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

On Appeal from Denial of Post–
Conviction Relief

DICKSON, Justice

The defendant, Chijioke Bomane Ben Yisrayl, formerly known as Greagree Davis, was convicted of the murder,[1] rape,[2] burglary,[3] and criminal confinement[4] of Debra Weaver, and the trial court ordered the death penalty. We affirmed the conviction and sentence on direct appeal. *Davis v. State,* 598 N.E.2d 1041 (Ind.1992), *cert. denied,* 510 U.S. 948, 114 S.Ct. 392, 126 L.Ed.2d 340 (1993). In the subsequent post-conviction proceeding, the post-conviction court partially granted the defendant's petition for post-conviction relief, vacating the death sentence and ordering a remand to the trial court for a new penalty phase trial and sentencing proceeding, but otherwise denied his petition. The defendant appeals from the post-conviction court's partial denial of post-conviction relief, raising issues regarding the effectiveness of counsel, the State's alleged failure to disclose exculpatory evidence, alleged extraneous influence on the jury, and alleged defects in the charging information. The State cross-appeals from the post-conviction court's partial grant of post-conviction relief, raising issues regarding the sufficiency of the sentencing order and the effectiveness of the defendant's counsel. We affirm the judgment of the post-conviction court.

1. IND CODE § 35–42–1–1 (1978).

2. IND.CODE § 35–42–4–1 (1978).

3. IND.CODE § 35–43–2–1 (1978).

4. IND.CODE § 35–42–3–3 (1978).

## I. Preliminary Considerations

■ Post-conviction proceedings do not afford an opportunity for a "super-appeal." *Bailey v. State,* 472 N.E.2d 1260, 1263 (Ind.1985); *Langley v. State,* 256 Ind. 199, 210, 267 N.E.2d 538, 544 (1971). Rather, post-conviction proceedings provide defendants the opportunity to raise issues that were not known at the time of the original trial or that were not available on direct appeal. *Lowery v. State,* 640 N.E.2d 1031, 1036 (Ind.1994) ("Post-conviction actions are special, quasi-civil remedies whereby a party can present an error which, for various reasons, was not available or known at the time of the original trial or appeal."), *cert. denied,* 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). These proceedings do not substitute for direct appeals but provide a narrow remedy for subsequent collateral challenges to convictions. *Weatherford v. State,* 619 N.E.2d 915, 916–17 (Ind.1993). The petitioner for post-conviction relief has the burden of establishing his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5).

■ As a general rule, when this Court decides an issue on direct appeal, the doctrine of *res judicata* applies, thereby precluding its review in post-conviction proceedings. *Lowery,* 640 N.E.2d at 1037. The doctrine of *res judicata* prevents the repetitious litigation of that which is essentially the same dispute. *Sweeney v. State,* 704 N.E.2d 86, 94 (Ind.1998); *Wagle v. Henry,* 679 N.E.2d 1002, 1005 (Ind.Ct.App. 1997); *Scott v. Scott,* 668 N.E.2d 691, 699 (Ind.Ct.App.1996). A petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error. *Maxey v. State,* 596 N.E.2d 908, 911 (Ind.Ct.App.1992). Issues that were available, but not presented, on direct appeal are forfeited on post-conviction review. *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind.1995); *Lowery,* 640 N.E.2d at 1036–37. *But cf. Woods v. State,* 701 N.E.2d 1208 (Ind.1998) (regarding claims of ineffective assistance of trial counsel).

■ Because the defendant is appealing from a denial of relief in a claim on which he had the burden of proof, he is appealing from a negative judgment. The standard of review in appeals from post-conviction negative judgments is well settled: the defendant must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. *Spranger,* 650 N.E.2d at 1119. The reviewing court accepts the trial court's findings of fact unless "clearly erroneous." Ind. Trial Rule 52(A).

■ The State, on the other hand, appeals from that portion of the post-conviction court's judgment that grants relief to the defendant. Because the State claims that the court erred in concluding that the defendant established one of his claims sufficiently to be entitled to relief, the judgment from which the State appeals is not a negative judgment. When an appeal after a non-jury trial does not challenge a negative judgment, the applicable standard is simply that prescribed by T.R. 52(A):

> On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

In reviewing a judgment granting post-conviction relief, " '[w]e reverse only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that mistake has been made.' " *State v. Van Cleave,* 674 N.E.2d 1293, 1295 (Ind. 1996) (quoting *Spranger,* 650 N.E.2d at 1119), *reh'g granted in part,* 681 N.E.2d 181 (Ind.1997), *cert. denied,* 522 U.S. 1119, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998). Because this "clearly erroneous" standard is a review for sufficiency of evidence, we

neither reweigh the evidence nor determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind.1994); *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994); *Indianapolis Convention & Visitors Ass'n, Inc. v. Indianapolis Newspapers, Inc.*, 577 N.E.2d 208, 211 (Ind.1991). When a "clearly erroneous" judgment results from an application of the wrong legal standard to properly found facts, we do not defer to the trial court. *Van Cleave*, 674 N.E.2d at 1296. We are not bound by the trial court's characterization of its results as "findings of fact" or "conclusions of law," but look to the substance of the judgment and review a legal conclusion as such even if the judgment wrongly classifies it as a finding of fact. *Id.* (citing *Indiana State Bd. of Public Welfare v. Tioga Pines Living Ctr., Inc.*, 575 N.E.2d 303, 306 & n. 1 (Ind.Ct.App.1991)).

## II. Effective Assistance of Counsel

Indiana Post–Conviction Rule 1(7) authorizes either the defendant-petitioner or the State to take an appeal. Both the defendant and the State contend that the post-conviction court erred in its determinations regarding the denial of the right to the effective assistance of counsel, but they each challenge a different aspect of the post-conviction court's conclusions. The defendant urges that the court erred in denying his claims that his trial counsel provided ineffective assistance at the guilt phase and that his appellate counsel was ineffective in asserting this claim. The State contends on cross-appeal that the post-conviction court erred in finding that the defendant's trial counsel provided ineffective assistance at the penalty/sentencing phase because this claim was subject to *res judicata* and forfeiture. The State also argues that the post-conviction court erred in finding that the defendant's appellate counsel provided ineffective assistance in

challenging trial counsel's penalty phase performance.

### A. Claim of Trial Counsel Ineffectiveness

In *Woods*, we held that a defendant may raise a claim of ineffective assistance of trial counsel for the first time in a post-conviction proceeding, but we emphasized that once the defendant chooses to raise his claim of ineffective assistance of trial counsel (either on direct appeal or post-conviction), he must raise all issues relating to that claim, whether record-based or otherwise. 701 N.E.2d at 1220. A defendant who chooses to raise on direct appeal a claim of ineffective assistance of trial counsel is foreclosed from relitigating that claim. *Id.* ("[I]neffective assistance of trial counsel is not available in post-conviction if the direct appeal raises any claim of deprivation of Sixth Amendment right to counsel."). *See also Bieghler v. State*, 690 N.E.2d 188, 200–01 (Ind.1997) ("Some of the [defendant's arguments on post-conviction appeal] are new arguments about aspects of trial counsel's performance we considered on direct appeal; others focus on aspects not mentioned earlier. In either case, the earlier ruling that trial counsel was not ineffective is *res judicata.*"); *Sawyer v. State*, 679 N.E.2d 1328, 1329 (Ind.1997) ("[The defendant], having once litigated his Sixth Amendment claim concerning ineffective assistance of counsel, is not entitled to litigate it again, by alleging different grounds."); *Morris v. State*, 466 N.E.2d 13, 14 (Ind.1984) ("Notwithstanding the fact that petitioner gave several additional examples of his counsel's alleged ineffectiveness during the post-conviction hearing, a consideration of the ineffectiveness issue would constitute review of an issue already decided on direct appeal.").

■ In his direct appeal, the defendant raised, and this Court considered and rejected, a claim of ineffective assistance of trial counsel. *Davis*, 598 N.E.2d at 1051–52. *Res judicata* thus barred him from relitigating this issue in post-conviction proceedings. The post-conviction court

erred as a matter of law in considering the merits of the defendant's claim directly challenging trial counsel's effectiveness.

### B. Claim of Appellate Counsel Ineffectiveness

In addition to directly challenging trial counsel's effectiveness, however, the defendant separately claimed on post-conviction that he was denied the effective assistance of *appellate* counsel on direct appeal. He alleged that appellate counsel failed to raise properly preserved meritorious issues and errors apparent in the record, failed to take necessary steps to adequately present issues that were raised, and pursued the issue of ineffective assistance of trial counsel without completely investigating and raising all related issues. P.C.R. Record at 457–63.[5] On the defendant's claim that his appellate counsel provided ineffective assistance, the post-conviction court entered findings of fact and conclusions of law, determining that appellate counsel was deficient in presenting the issue of trial counsel ineffectiveness.

■■■■ The Sixth Amendment entitles a criminal defendant to the effective assistance of counsel not only at trial, but during his first appeal as of right. *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821, 830 (1985). To prevail on his claim that he was deprived of his right to the effective assistance of appellate counsel in presenting the claim of ineffective assistance of trial counsel, the defendant had to establish to the post-conviction court the two components set forth in *Strickland v.. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Williams v. Taylor,* 529 U.S. 362, 389–391, 120 S.Ct. 1495, 1511–12, 146 L.Ed.2d 389, 416 (2000); *Roe v. Flores Ortega,* 528 U.S. 470, 474–476, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985, 994 (2000).

First, the defendant had to show that appellate counsel's performance was deficient. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. This required showing that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Second, the defendant had to show that the deficient performance actually prejudiced the defense, that is, that his appellate counsel's errors were so serious as to deprive the defendant of a fair proceeding, one whose result is reliable. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. In other words, to establish the element of prejudice, the defendant had to show that there is a reasonable probability that, but for his appellate counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Although we have generally considered claims of ineffective assistance of appellate counsel as analogous to claims of trial counsel ineffectiveness, *Taylor v. State,* 717 N.E.2d 90, 94 (Ind.1999); *Lowery,* 640 N.E.2d at 1048, there are significant and important differences between the roles of appellate counsel and trial counsel. In *Woods,* this Court observed:

> [E]xpecting appellate lawyers to look outside the record for error is unreasonable in light of the realities of appellate practice. Direct appeal counsel should not be forced to become a second trial counsel. Appellate lawyers may have neither the skills nor the resources nor the time to investigate extra-record claims, much less to present them coherently and persuasively to the trial court.

701 N.E.2d at 1216.[6]

■■■■ In a claim that appellate counsel provided ineffective assistance regard-

---

5. The defendant's Exhibit A in the post-conviction proceeding is a transcript of the record of proceedings on direct appeal. To avoid confusion, when citing the record, we refer to the record in the present proceeding as "P.C.R. Record" and the record on direct appeal as "Trial Record."

6. In *Woods,* we emphasized that the right to challenge appellate counsel's performance is

ing the selection and presentation of issues, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Conner v. State*, 711 N.E.2d 1238, 1252 (Ind.1999); *Bieghler*, 690 N.E.2d at 195–96. In determining whether appellate counsel's performance was deficient, the reviewing court considers the information available in the trial record or otherwise known to appellate counsel. Because the role and function of appellate counsel on direct appeal is different from that of post-conviction counsel, however, the performance of appellate counsel should not be measured by information unknown to appellate counsel but later developed after the appeal by post-conviction counsel. A defendant may establish that his appellate counsel's performance was deficient where counsel failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision.[7] *See Mason v. State*, 689 N.E.2d 1233 (Ind. 1997) (describing the rationale employed in *Mason v. Hanks*, 97 F.3d 887 (7th Cir. 1996)). Appellate counsel's decision regarding "what issues to raise and what arguments to make is 'one of the most important strategic decisions to be made by appellate counsel.'" *Conner*, 711 N.E.2d at 1252 (quoting *Bieghler*, 690

N.E.2d at 193 (quoting Lissa Griffin, *The Right to Effective Assistance of Appellate Counsel*, 97 W.Va.L.Rev. 1, 26 (1994))). Appellate counsel must consider various factors, including the likelihood of appellate success and the principles of *res judicata* and procedural default, which may foreclose future review in subsequent post-conviction proceedings. When assessing challenges to an appellate counsel's strategic decision to include or exclude issues, reviewing courts should be particularly deferential "unless such a decision was unquestionably unreasonable." *Bieghler*, 690 N.E.2d at 194. Appellate counsel's performance, as to the selection and presentation of issues, will thus be presumed adequate unless found unquestionably unreasonable considering the information available in the trial record or otherwise known to appellate counsel. To prevail on a claim of ineffective assistance of appellate counsel, a defendant must therefore show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy.

■ When the claim of ineffective assistance is directed at *appellate* counsel for

---

not equivalent to a direct challenge to trial counsel's representation by means of post-conviction relief proceedings:

First, ineffective assistance of appellate counsel requires the petitioner to overcome the double presumption of attorney competence at both trial and appellate levels. This is no mere quibble. Appellate lawyers must make difficult judgment calls in narrowing a broad range of possible claims to a select few that are thought to have the best chance of success. In this winnowing process, possibly valid claims may be eliminated due to page limits, time limits on oral argument, or the strategic judgment that the perceived strongest contentions not be diluted. . . .

Second, in elaborating the right to effective assistance of appellate counsel, the Supreme Court of the United States has never suggested that counsel must look outside the record for possible claims of error for the performance to be constitutionally effective. To the

contrary, courts adjudicating appellate ineffectiveness claims have rejected imposing this burden on appellate counsel. . . . Because there is no constitutional requirement for appellate counsel to search outside the record for error, an ineffective assistance of appellate counsel claim that is in substance a trial counsel claim requiring extrinsic evidence may be dead on arrival.

In short, a claim of ineffective assistance of appellate counsel is not an adequate back door to a full adjudication of ineffectiveness of trial counsel.

701 N.E.2d at 1221–22 (internal citations omitted).

7. After the Seventh Circuit's opinion in *Mason*, however, we emphasized in *Woods* that the issue of trial counsel ineffectiveness may be raised for the first time in post-conviction proceedings notwithstanding the failure of appellate counsel to raise it on direct appeal. *Woods*, 701 N.E.2d at 1216.

failing fully and properly to raise and support a claim of ineffective assistance of *trial* counsel, a defendant faces a compound burden on post-conviction. If the claim relates to issue selection, defense counsel on post-conviction must demonstrate that appellate counsel's performance was deficient and that, but for the deficiency of *appellate* counsel, *trial* counsel's performance would have been found deficient and prejudicial. Thus, the defendant's burden before the post-conviction court was to establish the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel.

### B(1) Effectiveness of Appellate Counsel as to Guilt Phase Claims

The post-conviction court denied relief on the defendant's claim that appellate counsel provided ineffective assistance in asserting the ineffective assistance of trial counsel as to the guilt phase of the trial. In the course of its evaluation, however, the post-conviction court found that appellate counsel's performance was deficient for claiming trial counsel ineffectiveness without challenging trial counsel's investigation and preparation.[8] This determination of deficient appellate performance was incorrectly based in substantial part upon information not presented in the trial record or otherwise known to appellate counsel. We could remand this case to the post-conviction court to apply the correct legal standard, but this would serve no useful purpose. Even when it erroneously considered additional evidence favorable to the defendant but not in the record on direct appeal or known to appellate counsel, the post-conviction court found against the defendant on this claim. To now remand this issue for reconsideration on less evidence would thus be pointless. The post-conviction court addressed the merits of the issue of ineffective assistance of trial counsel in the guilt phase, but nevertheless

found that there was no resulting prejudice because trial counsel's performance was neither deficient nor prejudicial. The court concluded, in part:

> [Trial counsel's] assistance was not so defective as to require reversal of the jury's verdicts herein. The Court concludes the [defendant] has failed to prove that [trial counsel's] performance fell below the objective standard of reasonableness for such representation at the time, and further, [defendant] failed to show that considering the totality of the case, any acts or omissions of [trial counsel] which were less than acceptable deprived him of a fair trial. The [defendant] did not prove herein that he was prejudiced by [trial counsel's] representation of him in the guilt phase of the trial because he did not prove a reasonable probability exists that but for [trial counsel's] representation, the result of the trial would have been different. [Trial counsel] did conduct a reasonable investigation into the State's theory of the case and he did a reasonable investigation to formulate a defense for the [defendant] considering the norms for the same at the time.

P.C.R. Record at 742.

Faced with the burden on appeal to demonstrate that the post-conviction evidence unmistakably and unerringly points to a contrary conclusion, the defendant argues that the outcome of his trial is unreliable and that he would not have been convicted had his trial counsel investigated, discovered, and presented the following evidence: the victim's neighbor's description of the man he saw on the night of the murder; identification of the watch that the defendant allegedly stole from the victim and sold to a co-worker; expert testimony concerning the victim's wounds and whether the weapons recovered could have inflicted those wounds; inconsistencies in

---

**8.** The post-conviction court concluded that appellate counsel, having asserted this claim by raising it only as to five specific instances, failed to present the claim adequately on appeal "both in the guilt and penalty phases of trial due to [trial counsel's] lack of preparation, effort and general concern about the case." P.C.R. Record at 737.

the defendant's incriminatory statements to police; expert testimony concerning serological evidence; and potentially exculpatory evidence.

The defendant contends that interviewing the victim's neighbor before trial would have disclosed weaknesses in the witness's trial testimony regarding his identification of the defendant as the man who came to his door seeking the victim on the night of the murder. The post-conviction court noted, however, that counsel established through cross-examination at trial that the witness "was not completely certain of his identification of [the defendant]," P.C.R. Record at 715, and that, when asked to identify the defendant from a photo line-up, "he said that it was most possible, but he was 'not sure' that it was the [defendant]," P.C.R. Record at 716 (citing the trial transcript). In addition, the witness's roommate also identified the defendant as the man asking about the victim.

The defendant contends that investigation regarding the watch he sold to a co-worker after the murder, which the State alleged belonged to the victim, would have disclosed discrepancies in the evidence. The post-conviction court found that the defendant's trial counsel effectively cross-examined the witnesses regarding this evidence and that other trial evidence contained the defendant's admission that he took the victim's watch and no longer possessed it.

The defendant contends that his counsel's failure to investigate prevented a challenge to the evidence regarding the weapons used in the crime and the nature of the wounds inflicted. After indicating to police that he had been involved in the crime, the defendant led the police to a location where two knives from the victim's kitchen were found—a chef's knife and a pastry knife. At trial, these knives and two hypodermic needles were alleged to be the weapons used in the crime. The State's expert testified that these weapons could have been used to inflict sixteen knife wounds and forty-five puncture wounds to the victim. At post-conviction, the defendant introduced the testimony of Dr. Werner Spitz, a forensic pathologist, who testified that one of the knives was not sharp enough to penetrate human skin and the syringes were not strong enough to withstand repeated stabbing. As noted by the post-conviction court, however, he also acknowledged that the larger knife could have inflicted the large incision wounds. The knife was found near the location identified by the defendant, who told police he had dropped the knife in the creek while washing it on April 2. The young boy who found the knife testified that he played daily in the creek and that he did not see the knife on April 3, but did see it the next day. Another witness testified that the knife introduced into evidence belonged to the victim and was missing from the victim's kitchen.

The defendant contends that trial counsel failed to challenge his confession, given to police during their second interview. Although the defendant would not allow the police to tape the interview, the officers took notes and later transcribed the following information. The defendant waited for the victim in her house, removed the light bulbs from the lamps, and drank some of the victim's wine. He also stated that "he observed a car pull into the driveway and that he didn't know she had a car like that." Trial Record at 1568–69. He waited while she made a phone call and then grabbed her from behind as she was leaving the house. After tying a rope around her hands and a handkerchief around her mouth, he led her to various places and eventually to a place under a bridge, while he drank a bottle of whiskey. When asked if he stabbed the victim, he responded, "I didn't know it was her until it was too late, and then I saw her face." *Id.* at 1574. He told police that afterward he took the knife to a creek to wash off the blood, but that he dropped it and left it there. He also led police to the area where the knives were found.

At post-conviction, the defendant presented the testimony of Dr. Richard Ofshe as an expert witness in police interrogation and confessions. He testified that the defendant's statements to the detectives were likely a result of the defendant repeating back information supplied by police. Detailing numerous items of physical evidence admitted at the guilt phase, the post-conviction court found "substantial physical evidence" consistent with the defendant's statements "despite Dr. Ofshe's testimony about some inconsistency." P.C.R. Record at 720. The court also found that trial counsel thoroughly cross-examined the detectives about the interviews and statements made by the defendant.

The defendant contends that trial counsel failed to challenge the serological evidence. At post-conviction, the defendant presented testimony of a forensic serologist challenging the evidence presented by the State at trial, particularly testimony regarding the vaginal swabs taken from the victim. At trial, the State's expert testified that the defendant was a blood type B secretor,[9] that he was within the 0.21% of the population who could have donated the seminal fluid found on the vaginal swabs, and that the defendant's shirt contained different secretions that were consistent with both the defendant's and the victim's blood types. The defendant's post-conviction witness disputed the State's trial expert witness on two bases: (1) assuming that the testing of the swab actually found activity from a blood type B semen donor, the group of potential donors would be 13.5% of the population rather than .21% as the State's witness indicated; and (2) the testing done on the swab was inconclusive as to blood type, and thus any

conclusion as to the semen was subject to dispute. On cross-examination, however, the defendant's post-conviction witness acknowledged that he could not eliminate the defendant as the donor. The post-conviction court found that trial counsel for the defendant effectively questioned the source of the semen and blood and established that potentially thousands of people in a population group of one million would have blood-typing characteristics consistent with the recovered semen samples. The court also carefully noted the extent of trial counsel's preparation regarding the topic of secretors and review of discovery.

The defendant also argues that the ineffectiveness of his trial counsel during the guilt phase is demonstrated by his failure to present evidence that "suggests someone else committed this crime." Brief of Petitioner–Appellant at 39. Specifically, the defendant points to fingerprints found on light bulbs and wine glasses that matched neither the defendant's nor the victim's, a bloody palm print found near the victim's body that could not be definitively identified as the victim's and was too small to be the defendant's, and the absence of any signs of a struggle evident on the defendant or his clothes.[10] He also notes that five cigarette butts found in the victim's home showed evidence that they had been smoked by someone with a blood type different from both the defendant's and the victim's. Such evidence is speculative at best and is substantially overshadowed by other evidence of the defendant's guilt, including his own statements to police.

 The defendant also contends that the post-conviction court erred in denying relief due to "fundamentally flawed"

---

**9.** A secretor is one whose blood type may be determined by examination of other bodily fluids because the antigens in the blood "leak" into those other fluids.

**10.** The defendant also characterizes testimony by the neighbor as exculpatory, but this misstates the testimony. The defendant contends that the witness testified that he "saw some-

one else ask for [the victim]," Brief of Petitioner Appellant at 39, and that the defendant asked "where [the victim] lived, although he had been to her home many times before." *Id.* In fact, the witness testified that he was asked whether he had *seen* the woman who lived next door. Trial Record at 1068.

jury instructions used in the guilt proceeding that caused the jury to have "an incorrect understanding of the State's burden." Brief of Petitioner–Appellant at 57. The defendant contends that guilt phase preliminary instruction No. 6 violated both the United States Constitution and the Indiana Constitution by "improperly defin[ing] 'reasonable doubt' as a doubt which 'arises in [the juror's] mind' after considering the evidence." Brief of Petitioner–Appellant at 57. The defendant urges that this language caused the jury to expect that reasonable doubt would be created by something in the evidence, erroneously placing the burden on the defendant to prove or disprove something. He also argues that guilt phase final instruction No. 3 informed the jurors that they should acquit the defendant if the State failed to meet its burden of proof. The defendant claims this instruction impermissibly allowed the jury to convict on less than a reasonable doubt because it did not state that the jury must acquit if the State failed to meet its burden of proof. These instructions were not challenged at trial or on direct appeal, but the defendant asserts that his counsel provided ineffective assistance by failing to challenge them effectively.

■■■ In determining the adequacy of jury instructions, we do not consider each instruction in isolation, but instead read them as a whole. *Hurt v. State,* 570 N.E.2d 16, 18 (Ind.1991); *Kirland v. State,* 43 Ind. 146, 154 (1873). In this case, preliminary instruction No. 5 clearly stated that the presumption of innocence "remains during the entire trial. The defendant is not required to present any evidence or prove his innocence." Trial Record at 172. Thus, the jury was informed that the defendant had no burden of proof as to his innocence. As to the defendant's claim that the jury was inadequately instructed on acquittal, preliminary instruction No. 6 stated: "Each of you *must* refuse to vote for conviction unless you are convinced beyond a reasonable doubt of the defendant's guilt." *Id.* at 173 (em-

phasis added). In addition, we have previously determined that the use of "should" adequately instructs the jury as to the proper course of conduct in the event there is a failure of proof by the prosecution. *Holmes v. State,* 671 N.E.2d 841, 849 (Ind.1996). The challenged instructions were not erroneous, particularly in light of the other instructions given.

■■■ Considering all of these alleged deficiencies in trial counsel's performance during the guilt phase, the defendant has not established that the evidence points unerringly and unmistakably to a conclusion contrary to that of the post-conviction court. Although it was improper for the post-conviction court to evaluate the claim of ineffective assistance of appellate counsel based on information outside the trial record or otherwise unknown to appellate counsel, we agree with the post-conviction court's determination that the defendant was not denied his right to effective assistance of counsel during the guilt phase of his trial. We conclude that the defendant has not established that the post-conviction court erred in its determination that, because the defendant was not deprived of the effective assistance of counsel during the guilt phase of his trial, he was not entitled to prevail on his claim of ineffective assistance of his appellate counsel's direct appeal challenge to trial counsel effectiveness during the guilt phase.

### B(2) Effectiveness of Appellate Counsel as to Penalty Phase Claims

We next consider the State's claim on cross-appeal that the post-conviction court erred in its determination that the defendant's sentence should be vacated and this case remanded for a new penalty phase trial and sentencing because of ineffective assistance of appellate and trial counsel. The State argues that trial counsel presented three mitigation witnesses and pursued theories of mitigation based on the defendant's childhood and his substance abuse. As noted above, however, a party challenging the grant of post-conviction re-

lief must demonstrate that the findings of the post-conviction court are clearly erroneous, and we give due regard to the opportunity of the post-conviction court to judge the credibility of the witnesses.

The post-conviction court's findings and conclusions reveal that the court expected appellate counsel, having elected to raise the issue of trial counsel ineffectiveness, to investigate, develop, and present fully the claim of trial counsel ineffectiveness, including a challenge to trial counsel's failure to investigate and present mitigation evidence. As discussed above, this is not the correct standard as to claims of appellate counsel effectiveness. An appellate lawyer who asserts a claim on direct appeal of trial counsel ineffectiveness is not required to undertake a full, extra-record investigation, as counsel on post-conviction would undertake. In determining a post-conviction claim that appellate counsel's performance was deficient, the proper focus is not merely whether appellate counsel, having chosen to raise on direct appeal a claim of the ineffectiveness of trial counsel, failed to fully raise and present the claim. Rather, the post-conviction court must assess whether the defendant has shown from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy.

In the defendant's direct appeal, appellate counsel presented the claim of ineffective assistance of trial counsel, asserting that counsel was deficient in not objecting to five matters. *Davis*, 598 N.E.2d at 1051. We found that, as to three of these matters, "timely objection by trial counsel would have properly been overruled." *Id.* at 1052. We concluded that the other two allegations of trial counsel deficiency "did not result in prejudice so serious as to deprive the defendant of a trial whose result is reliable." *Id.* Appellate counsel raised the issue of trial counsel effectiveness without including any claim that trial counsel failed to investigate and present mitigation evidence. The trial record shows that trial counsel presented three witnesses in the penalty phase, and their direct examination testimony together occupies only thirteen pages of the record. Two of the witnesses were the defendant's aunts, with whom he had lived for five years during his adolescence. The third was a police detective who testified regarding evidence of whiskey consumed by the defendant at the time of the crimes. Appellate counsel's opinion as to the adequacy of the mitigation evidence in the record is revealed in his testimony at the post-conviction hearing that "[w]hat does stick out in my mind is the fact that there ... was no mitigation offered.... The bifurcated-second stage, the penalty phase, if I recall correctly, there was no evidence presented." P.C.R. Record at 2080. The post-conviction court found that appellate counsel "intended to challenge [trial counsel's] preparation for the penalty phase because he knew it was not sufficient in that there basically was not any investigation done by [trial counsel]." *Id.* at 731.

■ Appellate counsel elected to raise the issue of trial counsel effectiveness, notwithstanding the risk that the doctrine of *res judicata* could prevent relitigation of the issue in later proceedings. He supported his claim of trial counsel ineffectiveness only by alleging trial counsel errors in failing to make objections, but this claim did not have a strong likelihood of success on direct appeal. Appellate counsel's claim of trial counsel ineffectiveness did not challenge counsel's investigation and presentation of mitigation evidence, even though appellate counsel was of the opinion that there was basically no mitigation investigation done by trial counsel and that there was no mitigation presented. We conclude the post-conviction court's finding of appellate counsel's deficient performance is not clearly erroneous. Appellate counsel believed that trial counsel had essentially presented no mitigation evidence,

and yet appellate counsel elected to raise the issue of trial counsel effectiveness without including the failure to present mitigation evidence in the face of the risk of *res judicata*. This failure cannot be explained by any reasonable strategy.

■ Having found deficient performance, we proceed to the prejudice component—whether appellate counsel's errors were so serious as to deprive the defendant of a fair proceeding whose result is reliable. In other words, did the defendant establish a reasonable probability that, but for his appellate counsel's actions in raising the claim of trial counsel ineffectiveness based only upon relatively weak examples, which barred the defendant from post-conviction review of the trial counsel ineffectiveness claim based on lack of investigation and presentation of mitigation evidence, the result of the proceeding would have been different?

The post-conviction court considered the allegations of deficient trial counsel investigation and presentation of mitigation evidence and made findings and conclusions thereon. It concluded that defense trial counsel's performance fell below the professional norms by failing to adequately investigate, develop, and present available mitigating evidence.[11] Finding trial counsel's failure to investigate and present this evidence to fall below existing professional norms, the post-conviction court concluded that the development and presentation of the omitted evidence "could have caused the jury to recommend against death and the judge not to impose the death penalty." P.C.R. Record at 744. The court

concluded that trial counsel's acts and omissions were "sufficiently serious" to cause it to view the jury's inability to render any recommendation as "unreliable." *Id.* at 746 (citing *Burris v. State*, 558 N.E.2d 1067, 1076 (Ind.1990)). Noting that the trial court may have sentenced the defendant to death notwithstanding a contrary jury recommendation, the post-conviction court found "a reasonable probability that, absent the omissions of [defense trial counsel] and thus the thorough presentation of mitigation, Judge Jones would have concluded that the balancing of aggravating and mitigating circumstances did not warrant a death penalty recommendation." *Id.* at 747.

The State argues that the mitigation evidence presented on collateral review but not at trial was largely cumulative, would have been subject to attack, and does not undermine confidence in the outcome of the proceeding. Because these are matters largely within the discretion of the post-conviction court, we do not conduct a *de novo* review. Considering the totality of the evidence that supports the judgment and the reasonable inferences to be drawn therefrom, we find that the State has not persuaded us to a firm and definite conviction that the post-conviction court erred in its determination that the defendant was denied the right to effective assistance of appellate counsel in adequately presenting the issue of trial counsel's ineffectiveness during the penalty phase. We affirm the post-conviction court's grant of

---

**11.** The post-conviction court found that trial counsel fell below applicable professional norms "by his fail[ure] to investigate mitigation himself, his failure to hire a mitigation expert, and his failure to hire an independent psychologist to interview the [defendant] when evidence and experts were readily available to him." P.C.R. Record at 745. To the extent that this finding may be read to require counsel in every death penalty case to hire a "mitigation expert" (an investigator specializing in the gathering and evaluation of mitigation evidence), it is wrong. Although such a specialist may assist counsel in performing investigative and evaluative tasks that counsel would otherwise perform, the need for such assistance will vary from case to case, depending on the issues, strategies, resources, and needs of counsel. While we disagree with the post-conviction court's separate reference to the failure to hire a mitigation expert, we understand the court's determination to be that counsel failed to adequately investigate, develop, and present available mitigating evidence, regardless whether by counsel's own efforts or that of hired specialists.

partial relief in the form of a new penalty phase trial and sentencing proceeding.[12]

## III. Failure to Disclose Exculpatory Evidence

The defendant contends that the post-conviction court erred in failing to reverse his conviction due to the State's failure to disclose a lab report that he contends his trial counsel might have used had it been available. The lab report at issue described test results for saliva samples taken from five cigarette butts found in the victim's home, concluding that the samples were inconsistent with both the victim's and the defendant's saliva. The defendant alleges that this lab report supported his theory that someone else committed the crime. The post-conviction court concluded that the mere fact that the cigarettes were smoked by someone other than the defendant or the victim, absent evidence that they were smoked by the perpetrator of the crimes, made it reasonable for the State to conclude that the lab report was not relevant and thus that there was no duty to disclose it.

■■■ A prosecutor has a duty to disclose exculpatory evidence and the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963). A prosecutor's omission does not violate her constitutional duty of disclosure unless it results in the denial of the defendant's right to a fair trial. *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399–2400, 49 L.Ed.2d 342, 352 (1976). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to

the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985) (adopting the *Strickland* formulation of materiality to cover cases of prosecutorial failure to disclose evidence).

■■■ In order to establish his claim before the post-conviction court, the defendant must have shown: (1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material, that is to say, if it had been disclosed to the defense, there is a reasonable probability that the result of the proceeding would have been different. *Minnick v. State,* 698 N.E.2d 745, 755 (Ind.1998) (citing *Bagley,* 473 U.S. at 685, 105 S.Ct. at 3385, 87 L.Ed.2d at 496; *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218).

■■■ The lab report at issue here suggests only that someone else had smoked in the apartment. No evidence links the cigarettes to the perpetrator of the crime or even suggests that they were smoked on the night of the crime. The simple fact that they were found in the victim's home after her death would not lead a reasonable person to conclude that the person who smoked these cigarettes was the perpetrator of the crime in light of other, more compelling evidence, nor would it impeach any of the other serological evidence presented. In light of the remaining evidence, the defendant has not established that this evidence was material either to guilt or punishment, and thus the prosecutor's duty to disclose was never triggered.

Even if the prosecutor had disclosed this report, it was unlikely to have changed the result of the proceeding. The other evidence supporting the verdict includes sero-

---

**12.** Our determination that the post-conviction court did not err in granting relief as to the defendant's claim of ineffective assistance of appellate counsel renders moot the claims by both parties as to the sufficiency of the sentencing order. In the remainder of this opinion, we address only those claims unaffected by the remand of this cause for a new penalty proceeding.

logical evidence of the defendant's presence at the crime scene, an eyewitness who placed him at the victim's apartment shortly before the incident, a confession to police of facts otherwise unknown to the public, and the defendant personally leading the police to a location where the weapon used in the murder was found. We conclude that the defendant has not met his burden of establishing that the evidence is without conflict and points unerringly or unmistakably to a conclusion contrary to the post-conviction court's.

## IV. Jury Influence

■ The defendant contends that the post-conviction court erred in rejecting his claim that he was denied an impartial jury and that a new trial is warranted because the jury that convicted him was racially biased. The defendant contends that one juror's vote against the recommendation of death "was not taken seriously because the color of her skin was the same as the defendant's," Brief of Petitioner–Appellant at 48, and that the presence of bias at the penalty phase shows that the jury was biased at the time of conviction.

In support of this claim, the defendant produced a note written by the jury foreman (a Caucasian male) during the penalty deliberations that informed the trial court that he believed that the jury could not reach a unanimous decision on death due to a race issue. The defendant also presented testimony from one African American juror who denied knowledge of the contents of the note. She testified that the jury foreman had been angry with her for being uncooperative on the issue of the death recommendation. The juror testified that the jury foreman attributed the disagreement to a "race thing," but denied that her decision was race-based. P.C.R. Record at 2620.

■ After reviewing the defendant's evidence on post-conviction (the testimony of one juror and a copy of the note sent to the trial court), the record of voir dire, and the trial record as a whole, the post-convic-

tion court concluded that the defendant had not met his burden of showing that he was denied an impartial jury. The burden is on the defendant to show a juror's bias or prejudice. *Martin v. State*, 535 N.E.2d 493, 495 (Ind.1989). Both the juror who testified and another African American juror who was not identified agreed with the guilty verdict. The defendant's evidence fails to establish that either the jury foreman or the jury as a whole was racially motivated to find the defendant guilty. We cannot conclude that the evidence leads unerringly and unmistakably to a conclusion contrary to that of the post-conviction court.

## V. Defects in the Charging Information

■ The defendant contends that the post-conviction court erred in determining that the defendant's conviction and sentence did not violate the United States and Indiana Constitutions due to alleged defects in the charging instrument. The defendant also contends that he was entitled to default judgment on this issue because the State failed to respond to his amended petition in which he raised this claim.

■ Turning first to the default judgment claim, we note that when the State answers a petition for post-conviction relief with legitimate defenses, that answer is deemed to be sufficient to challenge a later petition that raises the same issues of fact as the first. *State v. Fair*, 450 N.E.2d 66, 69 (Ind.1983). A second or additional answer is unnecessary when the State's initial answer makes it clear that it believes legitimate defenses are available that apply to all of the petitioner's claims for relief. *Id.* Having raised a general denial and affirmative defenses of laches, waiver, and *res judicata*, the State provided an answer sufficient to allow the defendant to understand its position. The defendant was not prejudiced by any failure of the State to amend its answer. The post-

conviction court did not err in denying the defendant's request for default judgment.

Turning to the defendant's specific claim that the charging instrument was defective, the defendant argues that all of the charges against him derive from the class B felony burglary charge, which alleged burglary with intent to confine, not burglary with serious bodily injury. The defendant urges that because the State charged him with class B felony burglary, because this burglary "established the entire episode," Brief of Petitioner–Appellant at 51, and because "[a]ll of the charged offenses begin with, and extend from, the burglary," *id.* at 52, the State was limited in obtaining convictions to offenses "logically included with that crime," *id.* at 52. The defendant contends that because the State chose not to charge him with burglary with serious bodily injury as a class A felony, the State was "not entitled to conviction of crimes consistent only with a theory it chose not to pursue, namely burglary with bodily injury." *Id.* at 55. The defendant cites *Rodriguez v. State*, 179 Ind.App. 464, 385 N.E.2d 1208 (1979), for the proposition that "the State is bound by the charges it brings and allows instruction on." Brief of Petitioner–Appellant at 54. The defendant also asserts that "[a]n alleged course of conduct by a defendant cannot be artificially separated into distinct parts" and that "[a]ll essential elements of a criminal offense must be contained within the charging instrument filed against a defendant." Reply/Cross–Appellee Brief at 46. The defendant argues that his convictions and sentences for the crimes of criminal confinement, murder, and rape "lack the necessary foundation in the State's charging method," Brief of Petitioner–Appellant at 55, that after charging the defendant with class B burglary the State cannot later "reap the benefit of an improper conviction of a greater offense," Reply/Cross–Appellee Brief at 46, and that, accordingly, these convictions and sentences should be vacated.

The post-conviction court restated the defendant's contention as follows: "since all charges against [the defendant] flow from the burglary charge, ... there is no jury finding that the burglary resulted in serious bodily injury (death) and the judgment of guilt of criminal confinement, murder, and rape result in verdicts greater than that charged, and therefore cannot stand." P.C.R. Record at 735. The court concluded that the "Judgments which entered herein as a result of the charging informations filed, and the jury instructions given, do not violate the principle announced in *Rodriguez v. State*, 179 Ind. App. 464, 385 N.E.2d 1208 (1979)." P.C.R. Record at 755. The court also concluded that the law was with the State on this issue.

■■■ The defendant asserts this claim, despite procedural default, alleging fundamental error. An otherwise forfeited claim may be reviewed when we find blatant violations of basic principles, the harm or potential for harm is substantial, and the resulting error denied the defendant fundamental due process. *Baird v. State*, 688 N.E.2d 911, 917 (Ind.1997).

■■■ When the defendant stood trial, he was charged with burglary, as a class B felony, criminal confinement, rape, criminal deviate conduct, and murder. The jury was instructed regarding the following offenses: burglary, both as a class C felony and a class B felony; confinement, both as a class D felony and a class B felony; rape, both as a class B felony and a class A felony; criminal deviate conduct; and murder. We agree with the post-conviction court and find no error, fundamental or otherwise.

■■■ The defendant argues in the alternative that this claim is available because appellate counsel was ineffective. We need not address the adequacy of counsel's performance unless the defendant establishes prejudice as a result of the claimed error. *Miller v. State*, 702 N.E.2d 1053,

1070 (Ind.1998). The purpose of the charging instrument is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense. *Wisehart v. State,* 693 N.E.2d 23, 63 (Ind.1998). The defendant does not allege or present any evidence that suggests that he was unable to defend himself based upon the charges as written. In fact, the charges as written clearly included allegations of bodily injury and death within the multi-count information. The charges upon which the defendant was convicted were set forth in a valid charging instrument, and we have previously determined that the evidence was sufficient to support the convictions on those charges. *Davis,* 598 N.E.2d at 1046. The defendant has not established a reasonable possibility that he was deprived of a fair trial, a trial whose result is reliable, because of appellate counsel's alleged error in failing to raise this issue. We decline to find post-conviction error on this issue.

## VI. Conclusion

We affirm the judgment of the post-conviction court, and this cause is accordingly remanded for further proceedings.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.