## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 27 2015, 6:49 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

David A. Smith
McIntyre & Smith
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry D. Blanton, Jr., *Appellant-Petitioner,* | July 27, 2015 |
| | Court of Appeals Cause No. 53A04-1410-PC-509 |
| v. | Appeal from the Monroe Circuit Court |
| | Cause No. 53C05-0904-PC-980 |
| State of Indiana, *Appellee-Respondent.* | The Honorable Mary Ellen Diekhoff |

**Barnes, Judge.**

# Case Summary

Larry Blanton appeals the post-conviction court's denial of his petition for post-conviction relief. We affirm.

# Issues

Blanton raises three issues, which we restate as:

> I. whether the post-conviction court properly denied Blanton's freestanding claim regarding Indiana Criminal Rule 4(C);
>
> II. whether Blanton received effective assistance of trial counsel; and
>
> III. whether Blanton received effective assistance of appellate counsel.

# Facts

The facts, as stated in Blanton's direct appeal, follow:

> In the fall of 2001, eleven-year-old T.D. lived with his father and stepmother in Effingham, Illinois. His mother and stepfather, Blanton, lived in Bloomington, Indiana. T.D.'s mother had visitation every other weekend from the time he was three years old. That fall Blanton sexually touched T.D. on four consecutive visits to Bloomington. At the time of all the touchings Blanton was forty-two years old and T.D. was eleven.
>
> The first incident occurred between midnight and one in the morning. T.D. felt Blanton kneeling on his bed. Blanton told T.D. they were going to the dump in the morning; T.D. rolled over to go back to sleep, but Blanton did not leave. Instead, Blanton picked up T.D.'s right arm and put it on his erect penis having T.D. stroke it several times. Then, Blanton rubbed his penis on T.D.'s face and lips trying to insert it into T.D.'s mouth. T.D. pretended he was asleep, keeping his eyes closed and mouth shut as tight as possible, to avoid any further actions by

Blanton. All the while, T.D. could see his mother asleep in her bedroom. The next day, T.D. accompanied Blanton to the dump. T.D. did not address the incident with Blanton, nor did he report the incident to his mother when she drove him back to Effingham. He did not tell his father or stepmother once he returned to Effingham.

Two weeks later T.D. returned to Bloomington for the weekend. Again, Blanton's kneeling on T.D.'s bed awakened him. He forced T.D. to stroke his erect penis, rubbed his penis on T.D.'s face and lips, and unsuccessfully attempted to insert his penis into T.D.'s mouth. T.D. rolled away from Blanton. Blanton inserted his finger into T.D.'s anus. T.D. silently wept due to the pain of the violation.

Two weeks later Blanton repeated his acts. This time, after forcing T.D. to stroke his erect penis and rubbing it on T.D.'s face and lips, he ejaculated on T.D.'s face. T.D. still did not report any of the incidents to his mother, father, or stepmother for fear of his mother and his safety.

The final molestation occurred two weeks later. Blanton again made T.D. touch his erect penis before attempting to force T.D. to perform oral sex on him. Prior to leaving, however, Blanton placed T.D.'s penis in his mouth. T.D. closed his eyes, turned his head, and hoped for it to end. During each of T.D.'s encounters with Blanton T.D. believed Blanton was intoxicated, as he could smell alcohol emanating from Blanton.

After the fourth incident, the molestations stopped. T.D. did not feel confident for approximately a month that it would not happen again, but tucked himself extra tight into his sheets. Eventually T.D.'s relationship with Blanton became less strained when T.D. noticed Blanton stopped drinking.

For two years T.D. did not say anything about the incidents to anyone. In seventh grade T.D. had sexual education classes and his friends began talking about sex. It was then he began [to] realize what had really happened between Blanton and himself. Then, at the beginning of his eighth grade year, his mind began to wander. Whenever his mind was not occupied, he thought of the encounters with Blanton and his grades began to suffer. His father and stepmother asked repeatedly what was causing this change in his behavior, but still T.D. did not disclose what happened. Eventually,

> while watching a special on Michael Jackson, T.D. began to cry and told his father about the abuse.

*Blanton v. State*, No. 53A01-0606-CR-226, slip op. at 2-4 (Ind. Ct. App. Apr. 19, 2007).

[4] On April 26, 2004, the State charged Blanton with Class A felony attempted child molesting, two counts of Class A felony child molesting, and Class C felony child molesting. Blanton was arrested on April 27, 2004. An initial hearing was conducted on April 28, 2004, and the trial court scheduled a pretrial conference for June 25, 2004. Blanton filed a motion to continue the pretrial conference, and the trial court rescheduled it for July 29, 2004. At the pretrial conference, a trial date of March 2, 2005 was set. However, the trial court later vacated that date due to court congestion and reset the trial for July 28, 2005.

[5] On July 21, 2005, Blanton filed a motion to continue the trial because "[t]he State wishes to add witnesses and one at least may be an 'expert'. Counsel would need additional preparation time once the witness or witnesses are named." App. p. 575. The motion also stated: "The State and Defense consulted and agreed to request this continuance." *Id.* The trial court granted the motion for continuance and set a final pretrial conference for September 13, 2005.[1] At the September 13th conference, the trial court set an additional final

---

[1] In its brief, the State mistakenly characterizes the September 13, 2005 pretrial conference as a trial date, resulting in erroneous calculations in the context of Criminal Rule 4(C).

pretrial conference for October 25, 2005. At the October 25th conference, the trial court set the trial for January 30, 2006. The parties apparently also discussed Blanton's Criminal Rule 4(C) concerns at the October conference, although we were not provided with a transcript of that conference.[2]

[6] On December 6, 2005, the trial court set a hearing for January 20, 2006, regarding Blanton's motion for discharge. However, Blanton did not file a motion for discharge until January 20, 2006. The parties indicated that further research was needed on the Criminal Rule 4(C) issue, and the trial date was reset for February 21, 2006, by the agreement of the parties. On February 14, 2006, the trial court denied Blanton's motion for discharge, and the trial was held as scheduled on February 21, 2006.

[7] The jury found Blanton guilty as charged, and the trial court sentenced him to an aggregate sentence of 105 years with thirty years suspended. On direct appeal, Blanton's appellate counsel raised two issues, the sufficiency of the evidence and the propriety of his sentence. We affirmed his convictions but reduced his sentence to an aggregate sentence of thirty years in the Department of Correction.

[8] Blanton filed a petition for post-conviction relief in 2009, and the petition was later amended twice. Blanton argued that the trial court erred by denying his

---

[2] Blanton asserts that "an agreement was made to preserve Blanton's right to seek discharge" at the October conference. Appellant's Br. p. 18. However, we were provided with no record to support this assertion.

motion for discharge, that he received ineffective assistance of trial counsel, and that he received ineffective assistance of appellate counsel. After a hearing, the post-conviction court denied his petition. Blanton filed a motion to correct error, which the post-conviction court granted in part regarding its time calculation for the Criminal Rule 4(C) issue. However, even with the correction, the post-conviction court still determined that no Criminal Rule 4(C) violation occurred. Blanton now appeals.

## Analysis

[9]     Blanton argues that the post-conviction court's denial of his petition is clearly erroneous. A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. *Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009) (citing Ind. Post-conviction Rule 1(6)). "The findings must be supported by facts and the conclusions must be supported by the law." *Id.* Our review on appeal is limited to these findings and conclusions. *Id.* Because the petitioner bears the burden of proof in the post-conviction court, an unsuccessful petitioner appeals from a negative judgment. *Id.* (citing P-C.R. 1(5)). "A petitioner appealing from a negative judgment must show that the evidence as a whole 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'" *Id.* (quoting *Allen v. State*, 749 N.E.2d 1158, 1164 (Ind. 2001), *cert. denied*). Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Id.*

## I. Freestanding Claim

Blanton first argues that the post-conviction court erred by denying his claim that the trial court should have granted his motion for discharge under Indiana Criminal Rule 4(C). The Indiana Supreme Court has repeatedly emphasized that in "post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002); *see also Canaan v. State,* 683 N.E.2d 227, 235-236 n.6 (Ind. 1997) (holding that the availability of the fundamental error exception as an exception to the waiver rule in post-conviction proceedings is generally limited to "deprivation of the Sixth Amendment right to effective assistance of counsel, or . . . an issue demonstrably unavailable to the petitioner at the time of his trial and direct appeal"), *cert. denied*. Whether the trial court properly denied Blanton's motion for discharge was an issue that was available at the time of his direct appeal. We disagree with Blanton's unsupported assertion that Criminal Rule 4(C) issues may be presented as freestanding claims. Consequently, this freestanding claim was unavailable to Blanton in his post-conviction proceedings.

## II. Ineffective Assistance of Trial Counsel

Blanton next argues that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was

prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *cert. denied*. A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

### A. Criminal Rule 4(C)

[12] Blanton argues that his trial counsel was ineffective for failing to address Criminal Rule 4(C) adequately. Although Blanton's counsel filed a motion for discharge pursuant to Criminal Rule 4(C), Blanton argues that his trial counsel was ineffective because he "apparently did not object to the trial setting or otherwise renew the motion for discharge at the beginning of the trial. Nor did he seek leave for an interlocutory appeal . . . ." Appellant's Br. p. 30. The post-conviction court rejected Blanton's claim.

[13] Blanton's trial counsel filed a motion for discharge pursuant to Criminal Rule 4(C), which provides:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

[14] Criminal Rule 4(C) was enacted "to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial." *Logan v. State*, 16 N.E.3d 953, 959 (Ind. 2014). The rule "places an affirmative duty on the State to bring the defendant to trial, but at the same time is not intended to be a mechanism for providing defendants a technical means to escape prosecution." *Id.*

[15] The State's duty to try the defendant within one year is an affirmative duty and the defendant is under no obligation to remind the State of its duty. *Marshall v. State*, 759 N.E.2d 665, 668 (Ind. Ct. App. 2001). However, when a trial date is set beyond the one-year limit provided under Criminal Rule 4(C), the defendant must file a timely objection to the trial date or waive his right to a speedy trial. *Id.* Moreover, "[i]f a delay is caused by the defendant's own motion or action, the one-year time limit is extended accordingly." *Cook v. State*, 810 N.E.2d 1064, 1066 (Ind. 2004).

[16] When Blanton was arrested on April 26, 2004, the Criminal Rule 4(C) period was triggered. *See Isaacs v. State*, 673 N.E.2d 757, 762 (Ind. 1996) (holding that the one-year period of Criminal Rule 4(C) commences with the date of arrest or filing of charges, whichever is later). Consequently, the State was required to bring Blanton to trial by April 26, 2005, unless the time was extended by court congestion or a continuance or delay caused by Blanton.

[17] Blanton filed a motion to continue the June 25, 2004 pretrial conference, and it was rescheduled for July 29, 2004, resulting in a delay of 34 days attributable to Blanton. Due to court congestion, the March 2, 2005 trial date was reset for July 28, 2005, resulting in a delay of 148 days due to court congestion.

[18] Blanton then filed a motion to continue the July 28, 2005 trial date, and it ultimately was rescheduled for January 30, 2006. Blanton argues, however, that this delay was not attributable to him because it was caused by discovery violations by the State. In support of his argument, Blanton relies in part on *Biggs v. State*, 546 N.E.2d 1271 (Ind. Ct. App. 1989). In *Biggs*, the defendant filed a motion to preclude the testimony of a confidential informant who failed to appear for depositions or, alternatively, to delay the trial until the State complied with discovery requests. We held:

> To put the defendants in a position whereby they must either go to trial unprepared due to the State's failure to respond to discovery requests or be prepared to waive their rights to a speedy trial, is to put the defendants in an untenable situation. Therefore, we will not charge the defendants with any delay that may appear to have resulted from the July 18, 1989, motion for a continuance.

*Biggs*, 546 N.E.2d at 1275.

[19] Here, however, the only information that we were provided with regarding the July 21, 2005 continuance request is from Blanton's motion to continue and the CCS. The motion to continue provided: "The State wishes to add witnesses and one at least may be an 'expert'. Counsel would need additional preparation time once the witness or witnesses are named." App. p. 575. The motion also stated: "The State and Defense consulted and agreed to request this continuance." *Id.* The CCS merely includes a notation that Blanton had filed a motion to continue, which the trial court granted. The record provided to us includes no information regarding alleged "discovery violations" by the State. Given this record, we cannot conclude that *Biggs* is controlling here. Blanton had the burden of demonstrating his claims, but we have no evidence that Blanton was placed in an "untenable situation" similar to the defendant in *Biggs*. Rather, given Blanton's motion to continue and agreement to the continuance, the delay caused by the motion to continue is properly attributable to Blanton.

[20] Blanton filed a motion for discharge on January 20, 2006. The 176 days between July 28, 2005 (the vacated trial date) and January 20, 2006 (filing of the motion for discharge) are attributable to Blanton. Consequently, at the time Blanton filed his motion for discharge, 358 days of delays and court congestion extended the one-year deadline to bring Blanton to trial. The Criminal Rule 4(C) deadline had not expired when Blanton filed his motion for discharge. In fact, even if all of the days between January 20, 2006, and the February 21,

2006 trial counted toward the Criminal Rule 4(C) deadline, the deadline also had not expired when Blanton was brought to trial.

[21] Blanton has failed to show that his trial counsel was deficient or that his trial counsel's alleged deficiency prejudiced him. Even if his trial counsel had pursued the motion for discharge further, he would have been unsuccessful because the Criminal Rule 4(C) deadline had not expired at the time of Blanton's trial. The post-conviction court properly denied Blanton's petition on this issue.

### B. Failure to Investigate Witnesses

[22] Blanton also argues that his trial counsel was ineffective for failing to investigate three exculpatory witnesses, Dr. Michael Kane, Tess Hazel, and Chris Blanton. "When deciding a claim of ineffective assistance of counsel for failure to investigate, we apply a great deal of deference to counsel's judgments." *Parish v. State*, 838 N.E.2d 495, 500 (Ind. Ct. App. 2005).

[23] All three proposed witnesses testified at the post-conviction hearing. Dr. Kane testified that he had treated Blanton and prescribed psychiatric medications for him during the relevant time period, that thirty to forty percent of patients taking the medications reported sexual dysfunction, that the side effects would be heightened by alcohol consumption, and that Blanton had not reported any sexual dysfunction.

[24] At the trial, T.D. testified that Blanton molested him after spending evenings at the Eagle's Club. Hazel testified that she was an officer of the Eagle's Club and

that she had no record of Blanton attending the Eagle's Club during November and December of 2001. However, as a result of a 2010 burglary, many of the records were inaccessible.

[25] Chris Blanton testified that Blanton is his father, that he would have been living in the house and present during T.D.'s visitations, and that his bedroom was directly below T.D.'s bedroom. Chris claimed that the floors were very thin and that he did not hear any unusual activity in T.D.'s room.

[26] Although Blanton claims that the three witness provided exculpatory evidence that rebutted key claims by T.D., we disagree. We cannot conclude that Blanton has established a reasonable probability that, but for trial counsel's error in failing to investigate these witnesses, the result of the proceeding would have been different. Dr. Kane merely testified that sexual dysfunction was a possibility in a minority of patients given the medications he prescribed to Blanton. There is no evidence that Blanton actually experienced sexual dysfunction as a result of the medications. Given the 2010 burglary, Hazel was unable to say definitively that Blanton did not enter the Eagle's Club during the period in question. Moreover, even if she was able to say that Blanton was not present at the club during the fall of 2001, the evidence would not have established that Blanton did not molest T.D. Even if eleven-year-old T.D. was mistaken about Blanton's location prior to the molestations, we cannot say that the result of the proceeding would have been different. Finally, Chris's testimony merely established that he did not hear any unusual activity coming from T.D.'s bedroom during the time period in question. That alone does not

establish a reasonable probability that, but for trial counsel's failure to investigate, the result of the proceeding would have been different. Blanton failed to demonstrate ineffective assistance of trial counsel regarding failure to investigate witnesses.

### III. Ineffective Assistance of Appellate Counsel

[27] Next, Blanton argues that his appellate counsel was ineffective. Specifically, Blanton argues that his appellate counsel should have raised the denial of his Criminal Rule 4(C) motion and ineffective assistance of trial counsel regarding the Criminal Rule 4(C) issue on direct appeal. The post-conviction court denied Blanton's petition on this issue.

[28] Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). Blanton argues that his appellate counsel failed to raise certain issues on appeal, resulting in waiver. To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id.* "To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are 'clearly stronger' than the raised issues." *Id.* (quoting *Timberlake v. State*, 753 N.E.2d 591, 605-06 (Ind. 2001), *cert. denied*). "If the analysis under this test demonstrates deficient performance, then we

examine whether, 'the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial.'" Id. (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997), *cert. denied*). Further, we must consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance. *Id.* at 1195-96. Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal. *Id.* at 1196. One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.*

### A. Motion for Discharge under Criminal Rule 4(C)

[29] Regarding Blanton's Criminal Rule 4(C) claim, we have found that Blanton was not entitled to discharge. Consequently, Blanton cannot show that he was prejudiced by his appellate counsel's failure to raise the denial of his motion for discharge on direct appeal. Even if his appellate counsel had raised the issue on direct appeal, Blanton would not have been successful, and he cannot show prejudice from his appellate counsel's failure to raise the issue.

### B. Ineffective Assistance of Trial Counsel

[30] Blanton argues that his appellate counsel should have raised ineffective assistance of trial counsel on direct appeal regarding the Criminal Rule 4(C) issue and trial counsel's failure to investigate the three additional witnesses. A post-conviction hearing, not a direct appeal, is normally the preferred forum to adjudicate an ineffectiveness claim. *Woods v. State*, 701 N.E.2d 1208, 1219 (Ind.

1998), *cert. denied.* "When the claim of ineffective assistance is directed at appellate counsel for failing fully and properly to raise and support a claim of ineffective assistance of trial counsel, a defendant faces a compound burden on post-conviction." *Ben-Yisrayl v. State*, 738 N.E.2d 253, 261-62 (Ind. 2000), *cert. denied.* "If the claim relates to issue selection, defense counsel on post-conviction must demonstrate that appellate counsel's performance was deficient and that, but for the deficiency of appellate counsel, trial counsel's performance would have been found deficient and prejudicial." *Id.* at 262. "Thus, the defendant's burden before the post-conviction court was to establish the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel." *Id.*

[31] We have already determined that Blanton failed to demonstrate ineffective assistance of trial counsel regarding both of these claims. Consequently, even if appellate counsel had raised ineffective assistance of trial counsel on direct appeal, he would not have been able to demonstrate that trial counsel's performance was deficient and prejudicial.

[32] Moreover, regarding investigating the three witnesses, we note that:

> [E]xpecting appellate lawyers to look outside the record for error is unreasonable in light of the realities of appellate practice. Direct appeal counsel should not be forced to become a second trial counsel. Appellate lawyers may have neither the skills nor the resources nor the time to investigate extra-record claims, much less to present them coherently and persuasively to the trial court.

[33] *Id.* at 260 (quoting *Woods*, 701 N.E.2d at 1216). "To prevail on a claim of ineffective assistance of appellate counsel, a defendant must therefore show

from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy." *Id.* at 261.

Blanton has failed to demonstrate that the information regarding the three witnesses at issue was available in the trial record or otherwise known to his appellate counsel. This claim fails.

## Conclusion

The post-conviction court properly denied Blanton's petition for post-conviction relief. We affirm.

Affirmed.


Riley, J., and Bailey, J., concur.