# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 07 2018, 9:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James C. Spencer
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary Lee Beason, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 7, 2018 <br><br> Court of Appeals Case No. <br> 48A02-1701-PC-112 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Angela Warner Sims, Judge <br><br> Trial Court Cause No. <br> 48C01-1506-PC-13 |

**Robb, Judge.**

# Case Summary and Issue

Gary Lee Beason appeals the denial of his petition for post-conviction relief. He raises two issues for our review, which we consolidate and restate as whether the post-conviction court erred in denying his petition for post-conviction relief. Concluding the post-conviction court did not err in denying his petition, we affirm.

# Facts and Procedural History

We summarized the facts of this case in Beason's direct appeal:

> The facts most favorable to the judgment are that on April 18, 1995, Karen Beason took four of her five children to a police substation in Anderson, Indiana. Karen was disoriented and confused and was admitted to the stress unit at Community Hospital. The Madison County Division of Family and Children took custody of the children in order to provide them with foster care.
>
> Pursuant to the intake process of the Division, the children were asked questions regarding improper sexual contact. J.G. and K.G., two of Karen's children, gave answers which indicated that they had been molested. Evidence provided from a subsequent investigation indicated that Karen's brother-in-law, Gary Lee Beason (Beason), had molested the two girls several times. K.G. was born on July 5, 1984. J.G. was born on December 31, 1985.
>
> In May 1995, Detective Kevin Smith was notified by Child Protective Services of the sexual abuse allegations regarding K.G. and J.G. Smith arranged for the children, who had been returned to Karen, to be removed from the home. Smith also arranged for a videotaped interview of K.G. and J.G. during which each girl repeated her claim of improper sexual contact by Beason. A medical examination of K.G. and J.G. confirmed that each girl had suffered penetrating injuries to her genitals.

Exhibits, Volume V at 63-64.

[3] On July 7, 1995, the State charged Beason with ten counts of child molesting as Class B felonies and one count of child molesting as a Class C felony. Beason's jury trial was held from August 16, 1995 through August 22, 1995. The jury found Beason guilty as charged and the trial court sentenced Beason to an aggregate sentence of 208 years in the Indiana Department of Correction.

[4] A significant number of the facts pertinent to Beason's petition for post-conviction relief occurred prior to his trial. After being arrested and charged with child molesting, Beason exercised his constitutional right to a speedy trial and the trial court scheduled his trial for August 10, 1995. On July 26, 1995, Beason's appointed counsel, R.C. Dixon, requested a continuance due to a previously planned vacation from August 3 through August 14. The trial court granted the motion and scheduled a new trial date of August 16, 1995. On August 2, 1995, Dixon filed another motion for a continuance. The trial court did not grant the continuance and Dixon went on vacation.

[5] On August 14, 1995, the trial court held a hearing to discuss the issue of Beason's speedy trial. The trial court had been informed that Mr. Dixon was "going to be back the 14th of August" and Beason was transported to court from jail for the hearing. Record of Proceedings, Volume 1 at 133. Mr. Dixon returned late that day and was not present at the hearing.

[6] The trial court held a pretrial hearing on August 15, 1995, at which Mr. Dixon was present and both he and Beason addressed the court.

| | |
|---|---|
| [Beason]: | [O]n August the 14th I stated that I wasn't happy with Mr. Dixon at all. The same thing . . . he is not ready to go into trial and we are ready to pick a jury. I asked for a fast and speedy trial, I didn't want to sit over at that jail for eight (8) months to a year waiting to go to trial. |
| [Trial Court]: | Well what is your point? |
| [Beason]: | I am not satisfied with the help that I have got from this lawyer at all. To go into the Jury trial right now is just hanging me. He is not ready to take and get my witnesses here. He has not heard my case, nothing. All he has got, the motions that I asked him to file I don't believe have been filed. . . . |
| [Trial Court]: | I don't know, it seems to me we are wasting time Mr. Beason because I told you yesterday under Criminal Rule #4 when you asked for a speedy trial I have to try you within seventy (70) days. I don't have any choice. I have got two (2) major cases. I told you I have got Kevin Carter and I have got State versus Weatherford and they are going to take the bigger part of two (2) maybe three (3) months to conclude. You asked for a speedy trial. You didn't withdraw it. I have no option but to go to trial. So the problem is not Mr. Dixon, the problem is you. . . . |
| * * * | |
| Mr. Dixon: | Your Honor, I want to address the motion I filed for a continuance. As I advised the Court when I requested the motion for continuance that I was going to be out of town. Now I understood, I thought I understood you to say that it would be continued to . . . I was thinking the 15th of September. |

| | |
|---|---|
| [Trial Court]: | Well I don't know where you got that idea Mr. Dixon because I started Kevin Carter on September the 5th and under Criminal Rule #4 as you and I know and Mrs. Sauer knows and now Mr. Beason knows I have to try Mr. Beason within seventy (70) days or the charges are dismissed. . . . So you can't have it both ways sir. |
| [Beason]: | I am not asking for . . . |
| [Trial Court]: | If you want a speedy trial you are going to get a speedy trial. |
| [Beason]: | I am asking for a lawyer that is going to be working for me. |
| [Trial Court]: | Well fine, your objection is noted. Your motion for continuance is denied. I have no choice Mr. Dixon. If I get into Kevin Carter then I am in the middle of November or December. I have no choice. It was Mr. Beason's obligation to withdraw his motion for a speedy trial and he didn't do it and we are going to trial today. . . . I will give you all the time in the world to talk. You want to see these tapes, I have already told you we will do it over the lunch hour. I had him here yesterday, but you apparently got back late. . . . |
| [Beason]: | And I didn't get a chance to talk to him yesterday. |
| [Trial Court]: | The problem was caused by Mr. Beason's demand for a speedy trial not by me and not by Mr. Dixon. |
| [Beason]: | I just don't want to sit over there for a year. |

| | |
|---|---|
| [Trial Court]: | Fine, I don't have any problem with that sir, it is a right that you have that we are going to take care of you. Anything else gentlemen? |
| Mr. Dixon: | I guess I just want to make sure the record reflects your Honor that I have visited Mr. Beason in jail three (3) times . . . |
| [Beason]: | Twice. |
| Mr. Dixon: | Before I left town. He has steadfastly told me that he had evidence that would prove his innocence. To date I haven't received anything from him, not even this witness list that he keeps mentioning. So I am dealing with an uncooperative defendant. |
| [Trial Court]: | I prefer not to get involved in that . . . . |
| [Beason]: | Your Honor there is a conflict between Mr. Dixon and myself. There has been to day one. |
| [Trial Court]: | Mr. Beason? |
| [Beason]: | Yes sir? |
| [Trial Court]: | Our problem is caused from your insistence to have a speedy trial. |
| [Beason]: | I just don't want to sit there for a year your Honor. |
| [Trial Court]: | I tried to explain to you that I don't have any room to maneuver here. I am not going to have these charges dismissed by the Supreme Court because I didn't bring you to trial within seventy (70) days. If we don't do it now it is going to be November or December before I have the time. So we are going to trial this morning and that is it. . . . |

* * *

[Trial Court]:      Okay, so that is your discovery gentlemen.  I will make time for you over the noon hour or later this afternoon if you wish to . . . you know it is obvious to all of us and perhaps you need to be reminded that the State has to go first.  You will have plenty of time to put your case together.  I will even give you a continuance in the middle of trial if you wish, an adjournment for a day or so, if that will be helpful.  I intend to be very cooperative with you gentlemen.  I realize the time pressure you are under. . . .  I realize that everything cannot go according to plan but it is . . . this is brought about by Mr. Beason requesting a speedy trial which I am obligated to honor.

[Beason]:          I just have a problem sitting here in jail waiting to go to trial.  That is the reason I asked for the fast and speedy trial.

[Trial Court]:      Yes sir and your concerns have been met and you are getting a speedy trial.

*Id.* at 110-17.  The parties then conducted voir dire and selected a jury before reconvening on the record.

[Trial Court]:      Alright, is there anything else now Mr. Dixon we can take up this evening before we adjourn?

Mr. Dixon:        Yes, your Honor.  We would like for the record to reflect your Honor that Mr. Beason was brought to Court yesterday without benefit of counsel, without counsel even being in the State for that matter and that Mr. Beason tells me that he was not aware that yesterday that he should ask that he withdraw his speedy trial request and that that request

was indeed made today. And your Honor we want the record to reflect that Mr. Beason still wants to withdraw his speedy trial request.

[Trial Court]: Well we were told you were going to be back the 14th of August so I added [Beason] to the list so he could talk to you about that very issue . . . so I mean no disrespect to you Mr. Dixon because there was nothing on the calendar. I just had him brought over in the event you were here. . . . You weren't here and that is fine. But the . . . okay he wanted to withdraw his speedy trial and he never mentioned a thing about it sir. He never said a thing. I guess the record should reflect I was here and Mrs. Sauer was here and he didn't say a thing about it did he Mrs. Sauer?

[State]: No sir, and if I remember correctly your Honor went to great length to discuss with Mr. Beason that he understood that the reason we were going to trial tomorrow was his choice because he had requested a speedy trial and any of his other problems were related to the speedy trial request just as we did this morning. It was very much the same thing as this morning and I think your Honor made it quite clear that there was certainly an option for Mr. Beason at any time to say that he didn't want to go to trial that he wanted to get better prepared and he chose that he wanted to have a trial today.

[Trial Court]: He never mentioned once that he was withdrawing his request for speedy trial Mr. Dixon and I am sorry if there is any confusion but the confusion is not mine. It is no [sic] of my making and I have no choice because of these other lengthy, intense, high profile cases that are going to take into probably November. I had no choice. He

|  |  |
|---|---|
|  | demanded a speedy trial so today was the day we have to go. And so that is it. We got our Jury. . . . |

* * *

| Mr. Dixon: | Your Honor I have . . . well that brings up another matter your Honor? |
|---|---|
| [Trial Court]: | Yes sir? |
| Mr. Dixon: | As you know I have not had time to really confer with my client. |
| [Trial Court]: | Why haven't you? . . . I know you talked to him from 9:00 o'clock till a quarter till eleven this morning almost non-stop . . . . [Y]ou are trying to leave the impression that I have not allowed you the time to talk with your client. That is certainly not true. I am not sure what your point is. |
| Mr. Dixon: | I am not trying. I am definitely leaving an impression your Honor that I need more time in order to prepare for this case. |
| [Trial Court]: | I understand that. |
| Mr. Dixon: | I don't . . . . |
| [Trial Court]: | We have been down that road . . . . |

*Id.* at 133-35, 139-40. Following this colloquy, the parties entered into a discussion concerning discovery.

| Mr. Dixon: | In response to the State's allegations your Honor, we would say it again, as far as discovery is concerned we received discovery this morning. Certainly it is not adequate |
|---|---|

time for us to go over anything with my client.

[State]: Discovery was provided over a week ago and unfortunately Mr. Dixon was out of town.

\* \* \*

Mr. Dixon: The only thing we had was the information.

[State]: I discussed with Mr. Dixon everything that there was and I further told him that there was [sic] medical reports that I would be providing and those were provided more than a week ago.

[Trial Court]: And even . . .

Mr. Dixon: In my absence.

[Trial Court]: And even your client this morning was complaining because he didn't have copies of statements but there aren't any statements. The statements are videos.

[Beason]: But isn't the doctor's statement still considered a statement? I mean . . .

[Trial Court]: Read my lips. I am George Bush. She gave it to your lawyer a week ago.

[Beason]: Oh.

[State]: Unfortunately Mr. Dixon was on vacation which I can't . . . I am not saying that Mr. Dixon shouldn't have gone on vacation, he had a vacation planned and that is fine, I am just saying that I just provided those[.]

[Trial Court]: My instincts tell me that he probably took those with him. In any event . . .

Mr. Dixon:     Your Honor, let me clarify your instincts.

[Trial Court]:  Yes sir.

Mr. Dixon:     I have been out of town since the 3rd, discovery was placed in . . . file marked on the 7th. I did not get any discovery until this morning.

[Trial Court]:  Okay, great. The lady said she gave them to you more than a week ago, that is true, she did.

Mr. Dixon:     Discovery when I am not available to receive it is not giving it to me.

[Trial Court]:  Well I am sorry Mr. Dixon I would . . . next time I will make arrangements to have them shipped by Federal Express, just tell us where to send them. I will be happy to cooperate in anyway [sic] Mr. Dixon.

Mr. Dixon:     Well next time doesn't help [Beason] any this time.

[Trial Court]:  Alright.

* * *

Mr. Dixon:     [Y]our Honor, as we have pointed out on several times . . ., we have been operating with a severe time disadvantage here. We did ask for a continuance on this trial and we did ask for a . . .

[Trial Court]:  You never asked for a continuance of the trial, you only asked for a continuance after I had the Jury selected.

[State]:       No he asked for a continuance of the trial last week.

Mr. Dixon:            Your Honor, I asked for a continuance before I left town.

[Trial Court]:        Well that is right, that is right, but your client didn't.and [sic] I made it perfectly clear I am in a bind. If I grant the continuance I can't try it till November or December. And I told you myself, get your client to sign it and he didn't. Had that been done I would have granted your continuance. But I can't have it both ways. I can't have one of you saying I want to go to trial and the other one saying I want a continuance because I will lose. It is what the client wants that the Court looks at. If he had signed that motion for continuance I would have granted it. But he didn't. I am stuck.

*Id.* at 143-46, 180-81. Beason's jury trial commenced the next day and, as noted, the jury found Beason guilty as charged and he was sentenced to 208 years in the Department of Correction. The trial court appointed William McCarty as Beason's appellate counsel.

[7]     Beason's direct appeal raised four issues: 1) whether the prosecutor committed prosecutorial misconduct; 2) whether Beason received ineffective assistance of trial counsel; 3) whether the trial court abused its discretion in finding aggravating sentencing factors; and 4) whether Beason's sentence was unreasonable. *See* Exhibits, Vol. V at 11, 63. With respect to Beason's argument concerning the effectiveness of his counsel, Beason argued his trial counsel was ineffective for failing to object to the State's closing argument. We affirmed Beason's convictions and sentence. *Beason v. State*, No. 48A02-9512-

CR-775, slip op. at 14 (Ind. Ct. App. Feb. 27, 1997); *see also* Exhibits, Vol. V at 75.[1]

[8]     In April of 2001, Beason, pro se, filed his petition for post-conviction relief and a public defender was appointed. In May of 2005, the public defender's office withdrew its appearance from the case. In June of 2012, Beason withdrew his petition without prejudice. On June 15, 2015, Beason, with the benefit of counsel, filed his second petition for post-conviction relief. In his petition for post-conviction relief, Beason alleged 1) he was denied effective assistance of trial counsel; 2) he was denied effective assistance of appellate counsel; 3) he was denied due process in violation of the Fourteenth Amendment to the U.S. Constitution; and 4) he was subjected to a critical hearing the day before his trial without the benefit of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 12 and 13 of the Indiana Constitution. The post-conviction court held an evidentiary hearing on March 28, 2016, at which both Mr. Dixon and Mr. McCarty testified. Mr. Dixon testified as follows:

> [Counsel for Petitioner]:   Were you prepared to go to trial?
>
> [Mr. Dixon]:   Based on . . . the transcript, actually no.
>
> * * *

---

[1] On Beason's ineffectiveness claim, this court did not address trial counsel's performance but concluded that Beason suffered no prejudiced from the prosecution's closing argument. *Beason*, No. 48A02-9512-CR-775, slip op. at 11; *see also* Exhibits, Vol. V at 72.

[Counsel for Petitioner]: Do you think that . . . Judge Spencer was . . . impartial when it came to child molest cases?

* * *

[Mr. Dixon]: I did not think that he was impartial in general, so.

* * *

[Counsel for Petitioner]: [B]ut you do admit, Mr. Dixon, that you were not prepared for this trial? Is that correct?

[Mr. Dixon]: I coulda used more time for sure.

Transcript, Volume I at 30-31, 43. And Mr. McCarty testified:

[Counsel for Petitioner]: You raised the issue of ineffective assistance of counsel on appeal. Uh, is there any reason what – or did you consider . . . evading that issue and waiting for post-conviction relief?

[Mr. McCarty]: I did not. I did not.

[Counsel for Petitioner]: [D]o you recall whether or not that was an issue of some controversy even back in nineteen (19) ninety-six (96)?

[Mr. McCarty]: About when those issues should be raised? . . . [Y]es. There was some debate about that, but I, I felt a responsibility to raise the issue.

* * *

[Counsel for Petitioner]:    Even if the issue of ineffective [assistance of trial counsel] is an issue that you raised. You don't believe that you avoided other . . . issues as far as the ineffectiveness of trial counsel?

[Mr. McCarty]:    No.

* * *

[Counsel for Petitioner]:    [W]ith the . . . argument of ineffective assistance of trial counsel . . . do you agree that, uh, you, you didn't raise any issue with respect to lack of preparation?

[Mr. McCarty]:    I did not raise that issue of lack of preparation.

[Counsel for Petitioner]:    Or the fact that trial counsel had no opportunity to review, uh, discovery prior to trial?

[Mr. McCarty]:    Uh, that was not raised in the appeal.

* * *

[State]:    When you write an appeal, can you raise every issue that you think might be there?

[Mr. McCarty]:    [P]erhaps I should explain my approach on appeals. Which was not to throw everything up against the wall and to see what stuck, I mean, this was a, a general approach . . . . But, but the general approach was to try to target the most significant . . . events of a trial that could be challenged, and narrow the focus and, and, and get the Appellate Court to focus on three (3) to five (5), issues that I thought were

paramount. . . . I felt over time, that the best success I had was in narrowing the focus to the . . . certain – a handful of issues, and . . . having the Appellate Court focus on that.

\* \* \*

[State]: Did you present to the Appellate Court what you thought had the best [sic] of succeeding for Mr. Beason?

[Mr. McCarty]: Yes, absolutely, I did.

[State]: And does your mind change on that any today?

[Mr. McCarty]: No. Uh, I, I – in reviewing all of this, uh, do I second guess myself? Do we all do that? Yes, but, but no. I, I feel that the issues that were the best issues were raised at the Appellate Court. I do.

*Id.* at 51-52, 56, 58, 62, 68-69.

[9] On December 16, 2016, the post-conviction court issued its findings of fact and conclusions thereon denying Beason relief. The post-conviction court determined Beason's allegation of ineffective assistance of trial counsel was res judicata and, even if it was not res judicata, Beason failed to demonstrate deficient performance by his trial counsel. With respect to his claim of ineffective assistance of appellate counsel, the post-conviction court determined counsel's performance was within the wide range of professional competence. Finally, the post-conviction court determined Beason's claims were barred by

the doctrine of laches. Beason now appeals. Additional facts will be added as necessary.

# Discussion and Decision

## I. Standard of Review

[10] An Indiana appellate court will not reverse a post-conviction court's denial of post-conviction relief unless the evidence is without conflict and leads only one conclusion, and the post-conviction court reached the opposite conclusion. *McCary v. State*, 761 N.E.2d 389, 391-92 (Ind. 2002). The post-conviction petitioner bears the burden of proof to convince the appellate court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* at 391; *see* Ind. Post-Conviction Rule 1(5) ("[T]he petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence."). We review the post-conviction court's factual findings for clear error, but we owe no deference to its conclusions of law. *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013).

[11] Post-conviction proceedings provide a petitioner with the "opportunity to raise issues that were not known at the time of the original trial or that were not available on direct appeal." *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied* 534 U.S. 1164 (2002). As a general rule, if an issue was known and available but not presented on direct appeal, the issue is waived. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). A petitioner claiming ineffective assistance of trial counsel may choose

to bring such a claim on direct appeal or in post-conviction proceedings. *Jewell v. State*, 887 N.E.2d 939, 941 (Ind. 2008). The appellate resolution of petitioner's ineffectiveness claim is res judicata if raised on direct appeal and decided adversely. *Id.* In such a case, however, a petitioner may still allege ineffective assistance of appellate counsel in bringing a claim of ineffective assistance of trial counsel on direct appeal. *McCary*, 761 N.E.2d at 392-93.

# II. Post-Conviction Relief

## A. Ineffective Assistance of Appellate Counsel

[12] Beason first contends he received ineffective assistance of appellate counsel on direct appeal. Specifically, Beason alleges appellate counsel was ineffective for "raising the issue of ineffective assistance of trial counsel on direct appeal and then raising it incompletely." Brief of Appellant at 13.

[13] The standard of review for a claim of ineffective assistance of appellate counsel is identical to that of ineffective assistance of trial counsel. *Lowery v. State*, 640 N.E.2d 1031, 1048 (Ind. 1994), *cert. denied*, 516 U.S. 992 (1995). Beason must first demonstrate appellate counsel performed deficiently. *Id.* In this regard, Beason must overcome the strongest presumption that appellate counsel delivered adequate assistance and we are highly deferential to counsel's selection and presentation of the issues. *Ben-Yisrayl*, 738 N.E.2d at 260-61. Second, Beason must show appellate counsel's performance prejudiced him. *Id.* at 260. To establish the element of prejudice, Beason must show that there is a reasonable probability that, but for his appellate counsel's unprofessional

errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

[14] Appellate counsel's determination regarding the selection of issues and what arguments to raise is one of the most important strategic decisions made by counsel in that role. *Id.* at 261. Counsel must make difficult judgment calls in narrowing a broad range of possible claims to a select few that are thought to have the best opportunity for success. *Woods v. State*, 701 N.E.2d 1208, 1221 (Ind. 1998), *cert. denied*, 528 U.S. 861 (1999). In narrowing the issues, potentially valid claims may be eliminated by strategic judgment so that the perceived strongest contentions are not diluted. *Id.* In assessing counsel's performance and the strategic decision to include or exclude certain issues, this court defers to appellate counsel's judgment unless the decision was "unquestionably unreasonable." *Ben-Yisrayl*, 738 N.E.2d at 261. Therefore, to prevail on a claim of ineffective assistance of appellate counsel, Beason must demonstrate that, based on information known to appellate counsel from the trial record, appellate counsel failed to present significant and obvious issues that cannot be explained by any reasonable strategy. *Id.*

[15] Finally, Beason effectively faces a compound burden in arguing appellate counsel was ineffective in raising the argument of ineffective assistance of trial counsel on direct appeal. To satisfy that compound burden, Beason must establish deficient performance and prejudice separately as to both appellate counsel *and* trial counsel. *Id.* at 261-62.

[16]     Beason's main complaint regarding the effectiveness of appellate counsel is the failure to raise the issue of trial counsel's lack of preparation for trial. Beason alleges trial counsel's lack of preparation manifested itself in numerous individual incidents of deficient performance and that appellate counsel's performance was deficient in failing to completely raise this issue. However, Beason's brief offers no discussion on how the alleged errors on behalf of trial or appellate counsel establish prejudice or a reasonable probability the result of the proceedings would have been different. Beason's failure to address the issue of prejudice permits an uncomplicated disposition of the case notwithstanding the nature of the proceedings.

[17]     Moreover, we are not persuaded that appellate counsel's selection and presentation of the issues in this case was "unquestionably unreasonable." *Id.* at 261. At the post-conviction hearing, appellate counsel stated his belief that he presented the issues on appeal that had the best chance of success for Beason and he did not exclude any other valid issues of ineffective assistance of trial counsel. *See* Tr., Vol. I at 56, 68. Appellate counsel's stated strategy on appeal was not to "throw everything up against the wall and to see what stuck . . . [his] general approach was to try to target the most significant . . . flaws and most significant . . . events of a trial that could be challenged . . . ." *Id.* at 62.

[18]     With respect to the incidents which Beason alleges appellate counsel should have also raised in his ineffective assistance of trial counsel claim, they are either meritless, not based in fact, or require more evidence to determine their truth. We address each of Beason's concerns in turn.

[19]    Beason argues appellate counsel was ineffective for failing to address trial counsel's cross-examination of J.G. and K.G. Beason suggests trial counsel did not review videotapes of J.G.'s and K.G.'s prior statements to police until after they testified. Beason suggests the videotapes contain favorable impeachment evidence. However, the alleged videotapes of J.G. and K.G.'s prior statements were not entered into evidence and are not in the record before us. Thus, appellate counsel's performance was not deficient in failing to raise this argument. *See Seeley v. State*, 782 N.E.2d 1052, 1061 (Ind. Ct. App. 2003) (holding appellate counsel's performance was not deficient in failing to search for issues outside the record), *trans. denied*, *cert. denied*, 540 U.S. 1020 (2003). Moreover, the trial transcript strongly suggests trial counsel reviewed the videotapes before K.G. and J.G.'s testimony and appellate counsel was not ineffective in failing to raise this issue. *See* Record of Proceedings, Vol. 1 at 177, 183-84 (trial court permitting trial counsel to view the tapes at lunch and arranging equipment and room for them to work in); Record of Proceedings, Vol. 4 at 802-03 (trial court and the State confirming trial counsel saw the videotapes).[2]

[20]    Beason next contends that appellate counsel should have included the issue of trial counsel's failure to investigate his claims that J.G. and K.G. had made prior allegations of molestation in the past by "two other persons connected

---

[2] We further note, because the videotapes are not in the record before us, the only account of their content is Beason's testimony at the post-conviction hearing, which the post-conviction court was not required to believe. *Daugherity v. State*, 547 N.E.2d 1116, 1118 (Ind. Ct. App. 1989).

with their mother." Br. of Appellant at 19. He further suggests a 1992 medical examination contradicts the 1995 medical examination performed on J.G. and K.G. that concluded they suffered hymeneal injury. The results of the alleged medical examinations in 1992 were inconclusive. *See* Record of Proceedings, Vol. 4 at 1024. But again, no such medical report exists in the record before us and we decline to find appellate counsel ineffective for failing to search outside the record. Moreover, it appears the medical report to which Beason refers was conducted in response to allegations by J.G. and K.G. that he had molested them in 1992. *Id.* at 1014-24. Nonetheless, the evidentiary value of such a report is low. "Inconclusive" results in a medical examination would not demonstrate, as Beason appears to suggest, that J.G. and K.G. were lying or being untruthful in 1995. Nor would it show their underlying allegations against Beason in 1992 were demonstratively false. Appellate counsel was therefore not deficient in failing to include this issue on direct appeal.

[21] Beason also contends appellate counsel performed deficiently in failing to address trial counsel's failure to object to Final Jury Instruction No. 3. This instruction reads, "A conviction may be sustained by the uncorroborated testimony of a single witness." Exhibits, Vol. 1 at 61. In 2003, our supreme court held the giving of this jury instruction is error after having been upheld since at least 1980. *Ludy v. State*, 784 N.E.2d 459, 460 (Ind. 2003). Beason's trial was conducted in 1995 and we have held trial counsel is not ineffective for failing to anticipate changes in the law. *Overstreet v. State*, 877 N.E.2d 144, 161-62 (Ind. 2007) (holding "counsel's representation cannot be deemed to have

fallen below an objective standard of reasonableness for failing to anticipate a change in the law"), *cert. denied*, 555 U.S. 972 (2008). Accordingly, because appellate counsel is unlikely to have succeeded on this issue if it were raised, we decline to find appellate counsel's exclusion of this issue constituted deficient performance.[3]

[22]    Finally, we address Beason's contention that trial counsel was unprepared for trial. A significant portion of Beason's brief addresses trial counsel's lack of preparation for trial and a large portion of the transcript from the hearing the day prior to trial is quoted above in the "Facts and Procedural History." From the transcript, it is clear trial counsel intended to leave the impression he needed more time to prepare for trial and we agree with Beason in this regard.

[23]    However, as repeatedly noted by the trial court, it was required to conduct Beason's trial because he never withdrew his speedy trial request. The trial court explained at great length that the court's calendar was congested and it would be several months, and outside of the seventy-day period for Indiana

---

[3] Beason also alleges trial counsel "failed to object to State's evidence of uncharged crimes committed by Beason." Br. of Appellant at 19. This argument is unsupported by any citation to relevant case law, statute, or other authority and we accordingly find it to be waived. *See Smith v. State*, 822 N.E.2d 193, 202–03 (Ind. Ct. App. 2005) ("[A] party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*. Additionally, Beason takes issue with being present in the trial court on August 14, two days before his trial, without counsel. The trial court clarified to trial counsel the court was told he would be back from vacation on August 14 and the trial court had Beason brought to court in case trial counsel arrived. *See* Record of Proceedings, Vol. 1 at 133-35. The transcript from August 14 is not included in the record, but from what we can gather, the trial court simply tried to impress upon Beason they were going to trial unless he withdrew his speedy trial request. Beason did not do so until the jury was impaneled the next day and now complains of his trial counsel's preparation.

Rule of Criminal Procedure 4, before Beason would be tried if the trial were to be continued. *See* Ind. Crim. Rule 4(B)(1); *see also Jackson v. State*, 663 N.E.2d 766, 770 (Ind. 1996) (discharging a defendant for failing to bring him to trial within seventy days of his motion for a speedy trial).

[24] Moreover, Beason never attempted to withdraw his request for a speedy trial until after a jury had been selected. *See* Record of Proceedings, Vol. 1 at 135. At that point, the trial court refused to grant a continuance. Beason was fully aware that trial counsel went on vacation prior to trial and would return shortly before the trial's scheduled commencement, yet Beason still adamantly informed the trial court he wanted to go to trial and did not want to sit in jail awaiting a trial. Given the severity of the charges, Beason's decision was ill-advised.

[25] But, as the trial court stated, Beason cannot have it both ways. He demanded a speedy trial with full knowledge that his trial counsel would be absent the week before trial. Beason cannot place his trial counsel between a rock and a hard place and then complain following an adverse result. The trial court made it clear to Beason and trial counsel he would have granted a continuance had Beason signed the motion for a continuance. Beason never did and never requested to withdraw his speedy trial request until after a jury had been impaneled.

[26] In sum, while Beason has brought numerous issues to our attention that he alleges constitute deficient performance on the part of appellate and trial

counsel, many of the issues are meritless, brought about by his demand for a speedy trial, or require more evidence in the record before the post-conviction court and this court on appeal. This court defers to appellate counsel's strategic judgment on issue selection and presentation unless it was "unquestionably unreasonable" and we cannot say appellate counsel performed deficiently on the issue of ineffective assistance of trial counsel. *Ben-Yisrayl*, 738 N.E.2d at 261.

## B. Fundamental Error

[27] Beason also claims the post-conviction court erred in denying his claim for relief alleging fundamental error. All of the issues which Beason claims amount to fundamental error were known and available at the time of direct appeal and are therefore waived. *Timberlake*, 753 N.E.2d at 597. Additionally, our supreme court has concluded freestanding claims of fundamental error may not be brought in a post-conviction relief proceeding. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). The post-conviction court did not err in denying Beason's claim of fundamental error.

# Conclusion[4]

---

[4] Because of our resolution of the issue of ineffective assistance of appellate counsel, we do not address Beason's challenge to the post-conviction court's judgment that Beason's petition was barred by the doctrine of laches.

The post-conviction court did not err in denying Beason's petition for post-conviction relief. Accordingly, we affirm the post-conviction court's judgment.

Affirmed.

Crone, J., and Bradford, J., concur.