NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-935

GLOBAL COMPANIES LLC & others[1]

vs.

HOP ENERGY, LLC, & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Defendant HOP Energy, LLC (HOP), appeals from a judgment entered against it on the plaintiffs' breach of contract claim following the parties' cross motions for summary judgment.[3]  HOP raises several arguments, and we address each in turn.

1.  Service of process.  HOP's first argument is that the plaintiffs did not effectuate service on it within the ninety-day period set out in Mass. R. Civ. P. 4 (j), as appearing in

_____

[1] Global Oil Companies LLC; Global Petroleum Corp.; Chelsea Sandwich LLC; Sandwich Rack; and Liberty International Underwriters.

[2] PG Genatt Group, LLC, and First Mercury Insurance Company.

[3] Hop's notice of appeal includes an appeal from the order denying his motion to alter or amend the judgment, but Hop's raises no separate argument as to this order.

402 Mass. 1401 (1988). The original complaint was served outside the ninety days, but a judge of the Superior Court (the first judge) allowed a motion to enlarge the time for service of process. An extension may be obtained upon a showing of "good cause." Id. See Commissioner of Revenue v. Carrigan, 45 Mass. App. Ct. 309, 311, 314 n.5 (1998).

The judge wrote that the extension was allowed "without prejudice to the defendants contesting service of process and its timeliness." This is a strange formulation, as it appears to indicate that the judge allowed the motion without determining whether there was "good cause" for allowing the extension. HOP argues that there was no such good cause. Even if that was what the judge meant, however, we need not determine, in this case, whether good cause was indeed shown. We conclude that even if the original complaint was late served, there was no prejudice to HOP.

To begin with, although we need not rely upon it, the fact is that at the time the motion was allowed, the statute of limitations had not expired. See G. L. c. 260, §§ 1, 2.[4] Thus, had the motion been denied or HOP's motion to dismiss allowed, the plaintiffs could simply have refiled the complaint and

_____

[4] Given that the motion was well within either the six-year statute of limitations for contract actions or the twenty-year statute of limitations for actions on contracts under seal, we need not resolve which statute of limitations applies.

2

served it -- which is in essence what they did.  While still within the time period for filing suit, the plaintiffs in fact filed an amended complaint, which is the operative one, and served it within ninety days of its filing.  In these circumstances, where there can, therefore, have been no prejudice to HOP, it would elevate form over substance to dismiss this case on the basis of late service of the original complaint.

2.  The merits.  Turning to the merits of the judgment, this case arises out of an injury suffered by John Trudel, an employee of HOP, on premises leased to HOP by plaintiff Chelsea Sandwich LLC.  The lease agreement contained a provision pertaining to HOP's insurance obligations.  It stated that HOP would:

> "take out and maintain throughout the Term [of the lease] . . . : Comprehensive liability insurance insuring Landlord and Tenant against all claims and demands for any injury to persons or property which may be claimed to have occurred on the Premises or on the sidewalk or ways adjoining the Premises, in an amount equal to not less than One Million Dollars."

HOP did have a commercial general liability policy issued by defendant First Mercury Insurance Company (First Mercury), which was effective at the time of the injury.  The policy provided that First Mercury would "have the right and duty to defend the insured against any 'suit' seeking" damages "because

3

of 'bodily injury' or 'property damage' to which this insurance applies."

Trudel never brought a "suit" against the plaintiffs. He did make a claim against the plaintiffs, which First Mercury refused to defend. After First Mercury's refusal to become involved, the plaintiffs settled the claim for $365,000, which their own insurer, plaintiff Liberty International Underwriters (Liberty) paid.

A second judge, who heard the plaintiffs' and HOP's cross-motions for summary judgment, concluded that HOP had failed to obtain the insurance which it had agreed in the lease to obtain, i.e., insurance against all claims and demands, not only against all suits; that this failure was a breach of contract; and that, consequently, the plaintiffs were injured in the amount of the settlement and the costs of defending against the claim.

a. Construction of the lease and insurance contract. We review the judge's construction of the lease and the insurance policy de novo. See James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 667 (2018). We agree that the plain language of the lease required HOP to obtain insurance broader than that it obtained from First Mercury. There is no error in the second judge's construction of the lease or the insurance policy.

HOP argues that the second judge erred by ignoring the conclusions of the first judge, who ruled in favor of First

4

Mercury on its earlier motion for summary judgment.  HOP argues

that the first judge's conclusions are "the law of the case."

Vittands v. Sudduth, 49 Mass. App. Ct. 401, 413 n.19 (2000)

("The 'law of the case' doctrine reflects the reluctance of a

second judge to rule differently from the first judge on a case,

issue, or question of fact or law once decided by final judgment

or on appeal").

This argument is of no avail, as the basis of the first

judge's entry of summary judgment in favor of First Mercury was

precisely that it did not breach its obligation by failing to

defend against what was only a claim and not a suit.  This is

precisely the reasoning of the second judge.

b.  First Mercury's refusal to defend the claim.  HOP also

argues that the reason First Mercury did not defend the claim

was that the plaintiffs failed to provide it with information it

requested.

Pursuant to the lease, HOP provided the plaintiffs with

certificates of insurance covering most of the Global entities

except Chelsea Sandwich LLC, a wholly-owned subsidiary of Global

Partners LP.  Chelsea Sandwich LLC is, in fact, the only entity

that is a signatory to the lease and that is named as the

landlord in the lease.[5]  It is true that in its final

_____

[5] In light of our disposition of this matter, we need not
determine whether HOP further breached the lease by failing to

5

communication with certain of the plaintiffs,[6] First Mercury asked for documentation showing that Global Companies LLC was a landlord listed in the lease or that the insurance provision covered affiliates of the landlord, given that, after reviewing the lease, First Mercury concluded that only Chelsea Sandwich LLC was listed as a landlord.

But, in an earlier communication, First Mercury also said that in the absence of any litigation, it was not obligated to defend. In its motion for summary judgment, First Mercury stated that it had no such obligation because of the terms of the insurance policy, and the first judge, who ruled on that motion, agreed. Likewise, in the order allowing the plaintiffs' motion for summary judgment against HOP, the second judge concluded that the claim by Trudel was not covered under the terms of the insurance policy. Again, we agree with that reading of the policy, and, consequently, the failure of some of the plaintiffs to respond to the questions posed in the e-mail message sent by First Mercury is ultimately irrelevant to this case. We note also that even if the plaintiffs had satisfied First Mercury that Chelsea Sandwich LLC was a named insured

---

obtain coverage for Chelsea Sandwich LLC as a "named insured" under the policy.

[6] Global Petroleum Corp., Global Companies LLC, and Global Oil Companies LLC.

under the policy, First Mercury still would have refused to defend, as the policy did not cover Trudel's claim, regardless of who the named insureds were.

c. _Affidavits of counsel_.  HOP next argues that affidavits of Trudel's counsel and plaintiffs' counsel, submitted as joint exhibits related to the parties' cross motions for summary judgment, were inadmissible because they were not based on the attorneys' personal knowledge as required by Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974).  As the judge made clear that she did not rely on them, any error in their admission was harmless.

d. _Right to a jury trial_.  HOP next argues that its right to a jury trial was denied.  Of course, a favorable ruling on summary judgment means that the judge has concluded there is no genuine issue of material fact requiring trial.  See _Correllas_ v. _Viveiros_, 410 Mass. 314, 316 (1991).  Allowance of a summary judgment motion, therefore, does not deny the losing party its right to a jury trial.  HOP does not specifically point to any genuine issue of material fact.  It argues that with regard to Trudel's claim, it was not put on notice regarding mediation, settlement negotiations, or the settlement itself.  But HOP points to no legal basis for asserting that there is any such requirement.  HOP has not been found to be an insurer, which might have a policy requiring such notice; it has been found to have breached its lease with the plaintiffs.

7

e.  Reasonableness of the settlement.  HOP argues that there was no admissible evidence submitted at the assessment of damages stage regarding the details of Trudel's accident, his injuries, and the overall damages he suffered, so the plaintiffs should not have been found to have carried their burden of proof that the settlement was fair and reasonable.  The second judge, who modified (in respects not relevant to this question) and signed the plaintiffs' proposed order noted only,

> "after review of the Plaintiffs' Motion for Assessment of Damages and supporting documentation, HOP Energy's Opposition and supporting documentation, and following oral arguments, it is hereby ORDERED that:
>
> "1. Liberty's $365,000 settlement, on behalf of Global, with Mr. John Trudel was fair and reasonable . . . ."

HOP is not arguing that there is a genuine dispute of material fact -- it put in no evidence with respect to the reasonableness of the settlement amount -- but that there was insufficient admissible evidence to support the judge's conclusion.

In support of their motion for the assessment of damages, the plaintiffs submitted only a copy of the lease; copies of the certificates of insurance that some of the plaintiffs had received; a copy of the petition for approval of a third-party settlement filed with the Department of Industrial Accidents (DIA) indicating that Trudel and the plaintiffs had agreed to a

8

$365,000 settlement; and a self-serving affidavit from plaintiffs' counsel stating, "[b]ased on my professional experience, the $365,000 settlement with Mr. Trudel was reasonable, fair, and equitable in light of his injuries."  We may assume the lease and the certificates do not address the reasonableness of the settlement.  The DIA petition does not appear to be admissible evidence, and we may assume it is not. See Commonwealth v. Williams, 63 Mass. App. Ct. 615, 619 (2005).[7]

Even were we to ignore the sworn affidavit of plaintiffs' counsel, the memorandum in support of the plaintiffs' motion referred to a number of facts that were contained within admissible evidence submitted as part of the parties' joint appendix at summary judgment:  specifically, that Trudel fell and injured his right shoulder while at the premises HOP leased from Chelsea Sandwich LLC, that Trudel initially demanded $1 million from the plaintiffs, and that the plaintiffs and Trudel ultimately agreed to settle his claims for $365,000.  We think this was sufficient to support the judge's finding.

f.  Attorney's fees.  HOP also argues that there was no basis for attorney's fees, but the lease expressly requires

_____

[7] The second judge also suggested at the nonevidentiary hearing that she could take judicial notice that the settlement was approved, but there is no indication that a settlement that was for too much would not be approved, so we leave that as well to one side.

9

them. It objects to the amount of fees awarded but has not pointed to any specific evidence that any aspects of the fees were unreasonable, stating only that the request for fees and the award "are filled with unduly vague, confusing descriptions and 'block billing' which did not segregate work performed on the claims against HOP Energy." HOP claims that "[t]here is a substantial amount of time and billing claimed by the Plaintiffs relating to claims and allegations against First Mercury and [defendant PG] Genatt [Group, LLC]" (Genatt), the defendant's insurance agent. This lacks any kind of specificity from which we could assess any alleged error in the fee award, which, we note, was reduced from what was requested by over $15,000.

g. <u>The judgment excludes Chelsea Sandwich LLC</u>. HOP does make two claims that are correct. First, it notes that the judgment does not make reference, or appear to apply, to Chelsea Sandwich LLC. For aught that appears, Chelsea Sandwich LLC is indeed a plaintiff in this case, and the party with whom HOP had a contract, the lease. (Chelsea Sandwich LLC did not pay the settlement, Liberty did, but the plaintiffs aver that Liberty is subrogated to the plaintiffs' claims.)

There is no explanation for why some of the named plaintiffs, including Chelsea Sandwich LLC, are not listed on the judgment, which lists only Global Companies LLC, Global Oil Companies LLC, and Global Petroleum Corp., or why the ones that

10

are listed are included.  In fact, there is no explanation of why the named successful plaintiffs are entitled to damages for a breach of Chelsea Sandwich LLC's lease.

The plaintiffs assert that "[i]t is immaterial which Plaintiffs judgment was entered for because . . . Chelsea Sandwich, LLC and the Global Plaintiffs are all related companies, and Liberty is subrogated to their claims.  Frost v. Porter Leasing Corp., 386 Mass. 425, 426-427 (1982)."  All the plaintiffs except Liberty are purportedly owned by a nonplaintiff entity, Global Partners LP.  But although they may be related companies in this way, there was no finding by any judge below that there was a basis for piercing the corporate veil, ignoring the corporate form, or treating them as one entity.

The plaintiffs also maintain that HOP acknowledged they were all parties to the lease by having them named as additional insured parties under the First Mercury insurance policy.  Putting aside that that policy does not even cover this claim, this has nothing to do with whether they are parties to the breached contract.  The text of the lease does not name as landlord any of the parties for whom certificates of insurance were issued.

Consequently, the case must be remanded for a determination of which plaintiff or plaintiffs were damaged and why they may

11

claim compensation for a breach of the agreement between Chelsea Sandwich and HOP (and for any modification of the judgment that may require).

h. _An offset for the plaintiffs' settlement with Genatt_. In addition, HOP notes that the amount of the judgment was not offset by the $17,500 recovered by the plaintiffs in their settlement with Genatt. The judge's order denying HOP's motion to alter or amend the judgment indicated that HOP was entitled to this setoff. Again, there is no explanation for why this setoff was not included in a revised judgment, and the plaintiffs conceded at argument that it should have been. On remand, the amount of the judgment should be set off by that Genatt settlement amount. From the date of that settlement, interest should run only on the amount of damages awarded in this case, as interest should not accrue on amounts already paid by Genatt.

i. _Interest_. Finally, HOP argues that interest should run not from the date of the filing of the plaintiffs' action, as the judge ordered, but from the date of the breach. As the plaintiffs point out, however, the breach necessarily occurred well before the date when the plaintiffs commenced this action. The error HOP alleges would inure to its benefit, not detriment.

j. _Appellate attorney's fees_. The plaintiffs request appellate attorney's fees under § 11.12 of the lease. That

12

provision states, "In the event either Landlord or Tenant shall institute any action or proceeding against the other to enforce the terms of this Lease or any default hereunder, the unsuccessful party in such action or proceeding agrees to reimburse the successful party for reasonable attorneys' fees, including reasonable costs and disbursements incurred by the successful party."

Such fees were awarded in the trial court, and HOP does not contend that that provision is inapplicable here. The plaintiffs are clearly the "successful party" in the litigation and have been successful here on appeal on all but two matters. Nonetheless, HOP has succeeded on those two matters, the issue of the judgment appearing not to run against Chelsea Sandwich LLC, itself, and the offset. Consequently, the request is allowed to the extent it covers attorney's fees for work on all except those two issues. The plaintiffs shall file, within fourteen days of the of issuance of the decision in this case, documents supporting their fee request, and the defendant shall have fourteen days to respond in accordance with Fabre v. Walton, 441 Mass. 9, 10-11 (2004). To the extent the plaintiffs seek damages, costs and interest on the ground the appeal is frivolous, that request is denied.

3. Conclusion. We vacate that portion of the judgment setting forth the names of the plaintiffs included in the

13

judgment and remand the matter for further proceedings so that the judge can determine which plaintiff or plaintiffs suffered damages and should be included in the judgment. We also vacate the portions of the judgment related to the amount of damages and the calculation of interest, and on remand the judge shall incorporate in the judgment the offset related to Genatt, and

the interest shall be recalculated as described in this memorandum and order.  The judgment is otherwise affirmed.  The order denying the motion to alter or amend the judgment is vacated.

<u>So ordered</u>.

By the Court (Rubin, Massing & Grant, JJ.[8]),

Clerk

Entered:  June 16, 2025.

---

[8] The panelists are listed in order of seniority.

15